UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII FOODSERVICE ALLIANCE, LLC, A HAWAII LIMITED LIABILITY COMPANY;<br><br>Plaintiff,<br><br>vs.<br><br>MEADOW GOLD DAIRIES HAWAII, LLC, A HAWAII LIMITED LIABILITY COMPANY;  HOLLANDIA DAIRY, INC., A CALIFORNIA CORPORATION; HERITAGE DISTRIBUTING COMPANY, SAPUTO DAIRY FOODS USA, LLC, A DELAWARE CORPORATION;<br><br>Defendants. | CIV. NO. 21-00460 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART THE DAIRY FARMERS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

On June 9, 2022, Defendants Hollandia Dairy, Inc. ("Hollandia"), Heritage Distributing Company doing business as Ninth Avenue Foods ("Heritage"), and Saputo Dairy Foods USA, LLC's ("Saputo" and collectively "the Dairy Farmers") filed their Motion to Dismiss and for Judgment on the Pleadings ("Motion"). [Dkt. no. 63.] Plaintiff Hawaii Foodservice Alliance, LLC ("Plaintiff") filed its memorandum in opposition on July 8, 2022, and the Dairy Farmers filed their reply on August 12, 2022. [Dkt. nos. 71, 72.] This matter came on for hearing on August 26, 2022. The Dairy Farmers' Motion is hereby

granted in part and denied in part for the reasons set forth
below.

## BACKGROUND

Plaintiff's operative complaint is its First Amended
Complaint, filed April 18, 2022.  [Dkt. no. 49.]  Plaintiff
alleges Defendant Meadow Gold Dairies Hawaii, LLC ("MGD")
advertises and sells milk that is one hundred percent from cows
outside of Hawai`i.  [First Amended Complaint at ¶ 15.]  The
Dairy Farmers allegedly supply MGD with pre-packaged milk
products that are one hundred percent produced from cows outside
of Hawai`i.  [Id. at ¶ 16.]  The Dairy Farmers apply labels to
the pre-packaged milk products "indicating such products
originate from 'Hawaii's Dairy,' are 'Made with Aloha,' and, in
some instances, are associated with the farmers in Oahu who
produced milk from their cows in Hawaii through the 'Dairymen's
Association' beginning in the late 1800s, before they are
shipped to MGD in Hawaii."  [Id. at ¶ 17.]  "Hollandia also
supplies MGD with Mainland Milk in 6,000 gallon tanks that is
pasteurized in California, shipped to and re-pasteurized on the
Island of Hawaii, and then packaged by MGD with identical
labeling as Hollandia's and Heritage's pre-packaged and labeled

Mainland Milk Products."[1]  [Id. at ¶ 18.]  Plaintiff alleges MGD and the Dairy Farmers (collectively "Defendants") "falsely designate the geographic origin of the Mainland Milk Products" by placing the statements "'Hawaii's Dairy'" and "'Made with Aloha' on product labels" and other statements and advertisements.  [Id. at ¶ 19.]

Plaintiff also asserts MGD states on its website, "[u]nder the title, 'AN ISLAND TRADITION,'" "that MGD is proud to be locally owned and operated" and MGD "'continue[s] to produce your Meadow Gold favorites always made with aloha.'" [Id. at ¶ 25 (emphasis in original).]  "MGD's website also prominently features the MGD mascot known as 'Lani Moo' in local Hawaii attire, along with several photographs of farmland and a cow in Hawaii[.]"  [Id. at ¶ 26.]  Plaintiff alleges "MGD owns zero cows in Hawaii . . . and owns zero dairy farms in Hawaii." [Id. at ¶ 27.]  Plaintiff further alleges that,

> [w]hile many years in the past a different entity that owned and operated farms known as "Meadow Gold" actually sourced their dairy products from their own cattle and dairy farms in Hawaii and from other farms in Hawaii, MGD did not exist until April 2020, and at no time in its existence did it source any of the contents of its Mainland Milk Products from any cows or dairy farms in Hawaii.

---

[1] Plaintiff defined "Mainland Milk Products" as "milk and other milk products such as whipping cream imported from California in the continental United States . . . ."  [First Amended Complaint at ¶ 1.]

[Id. at ¶ 30.]  Plaintiff alleges Defendants "deliberately mislead consumers into believing that the Mainland Milk Products supplied to and sold by MGD in Hawaii contain milk originating in Hawaii to induce them into choosing those products over other competing products . . . ."  [Id. at ¶ 31.]  Plaintiff states a reasonable consumer would believe that Defendants' milk products originate from farms in Hawai`i.  [Id. at ¶ 29.]

Moreover, Defendants allegedly "conspired and participated in an organized campaign with each other to use misleading information to deceive Hawaii consumers regarding material aspects of their Mainland Milk Products, including the products' origin, to penetrate and enhance the success of their respective products in the Hawaii milk product market . . . ."  [Id. at ¶ 32.]  Defendants also allegedly "knew about, approved, and condoned the misleading labels . . . ."  [Id. at ¶ 33.]  Plaintiff asserts Defendants participated in unlawful, deceptive, and anti-competitive conduct that caused and continue to cause significant harm to Plaintiff.  [Id. at ¶¶ 34-35.]

Plaintiff alleges four claims: (1) the Dairy Farmers are directly or contributorily liable under the Lanham Act § 43(a), pursuant to 15 U.S.C. § 1125(a), for false designation of origin, false advertising, and unfair competition ("Count I"); (2) the Dairy Farmers engaged in unfair methods of competition, in violation of Haw. Rev. Stat. Chapter 480

4

("Count II"); (3) the Dairy Farmers committed false advertising, in violation of Haw. Rev. Stat. § 708-871 ("Count III"); and (4) the Dairy Farmers engaged in deceptive trade practices, in violation of Haw. Rev. Stat. Chapter 481A ("Count IV").  The Dairy Farmers seek dismissal of Plaintiff's four claims on the ground that Plaintiff provides insufficient facts to state plausible claims.

## DISCUSSION

## I.   Lanham Act Claim (Count I)

As an initial matter, the parties disagree as to whether Fed. R. Civ. P. 9(b) applies to Plaintiff's Lanham Act claim.  Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Although the Ninth Circuit has not ruled on whether Rule 9(b) applies to Lanham Act claims, many district courts within the Ninth Circuit have concluded that it does when the claim sounds in fraud.  See, e.g., 23andMe, Inc. v. Ancestry.com DNA, LLC, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018) ("But the better reasoned authority is that, where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable." (citations omitted)); Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc., Case No.: 20CV1765-GPC(BGS), 2021 WL 1541649, at *3 (S.D. Cal April 20, 2021) ("Courts in

this district have applied Rule 9(b) to false advertising claims under the Lanham Act that are grounded in fraud." (citation omitted)).

The Court agrees that, when a Lanham Act claim sounds in fraud, Rule 9(b) applies.  Plaintiff states it "has not asserted a claim for fraud, intentional misrepresentation, or conspiracy," given that "the allegations regarding coordination were included because they are relevant to damages and fees . . . ."  [Mem. in Opp. at 8.]  Plaintiff's argument is unpersuasive.  Plaintiff alleges Defendants labeled and supplied products "with false designations of origin and/or false or misleading descriptions or representations of fact[.]"  [First Amended Complaint at ¶ 40.]  It further alleges the Dairy Farmers "are deceiving consumers to pay a premium price," [id. at ¶ 45,] "operated with a unity of purpose and/or in a coordinated effort," [id. at ¶ 46,] and "knowingly and intentionally participat[ed] in and/or contribut[ed] to MGD's unlawful conduct under the Lanham Act[,]" [id. at ¶ 58.] Indeed, Plaintiff's allegations sound in fraud and, therefore, Rule 9(b) applies.

Moving to the substance of Plaintiff's claim, the Lanham Act states, in pertinent part:

(a)  Civil action

> (1)  Any person who, on or in connection
> with any goods or services, or any container
> for goods, uses in commerce any word, term,
> name, symbol, or device, or any combination
> thereof, or any false designation of origin,
> false or misleading description of fact, or
> false or misleading representation of fact,
> which--
>
>> (A)  is likely to cause confusion, or
>> to cause mistake, or to deceive as to
>> the affiliation, connection, or
>> association of such person with another
>> person, or as to the origin,
>> sponsorship, or approval of his or her
>> goods, services, or commercial
>> activities by another person, or
>
>> (B)  in commercial advertising or
>> promotion, misrepresents the nature,
>> characteristics, qualities, or
>> geographic origin of his or her or
>> another person's goods, services, or
>> commercial activities,
>
> shall be liable in a civil action by any
> person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C § 1125(a)(1).  "Section 1125(a) thus creates two

distinct bases of liability: false association, § 1125(a)(1)(A),

and false advertising, § 1125(a)(1)(B)."  Lexmark Int'l, Inc. v.

Static Control Components, Inc., 572 U.S. 118, 122 (2014)

(citation omitted).  Plaintiff alleges the Dairy Farmers are

directly and/or contributorily liable for false designation of

origin/association under § 1125(a)(1)(A) and false advertising

under § 1125(a)(1)(B).

Plaintiff's Lanham Act claim, at its core, is a false designation of geographic origin claim.  Some courts have treated false designation of geographic origin claims as false advertising claims under § 1125(a)(1)(B), rather than false designation of origin/association claims under § 1125(a)(1)(A).  See, e.g., Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 252-53 (3d Cir. 2011) (analyzing false designation of geographic origin claim with the false or misleading test under § 1125(a)(1)(B)).  Other courts have done the opposite.  See, e.g., Forschner Grp., Inc. v. Arrow Trading Co., 30 F.3d 348, 354 (2d Cir. 1992) (assessing false designation of geographic origin claim with the likelihood of confusion test under § 1125(a)(1)(A)).

The parties have not identified, and this Court is not aware of, any Ninth Circuit cases addressing whether false designation of geographic origin claims can be brought under both § 1125(a)(1)(A) and § 1125(a)(1)(B).  A district court in this circuit, however, has addressed the issue and concluded that false designation of geographic origin claims can be brought under both § 1125(a)(1)(A) and § 1125(a)(1)(B).  See Corker v. Costco Wholesale Corp., No. C19-0290RSL, 2019 WL 5893291, at *4 (W.D. Wash. Nov. 12, 2019) ("Two Supreme Court opinions, both of which were written after Congress separated Section 43(a)(1) into two subsections and both of which involved

claims under Section 43(a)(1)(A), note that courts have long understood the term 'origin' to include geographic origin . . . ." (some citations omitted) (citing <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 28 (2003); <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 779 (1992)). The Court finds the analysis in <u>Corker</u> persuasive and therefore assesses Plaintiff's false designation of geographic origin claim under both sections of § 1125(a)(1).

### A.   Direct Liability for False Designation of Geographic Origin Under § 1125(a)(1)(A)

The parties dispute the relevant standard in pleading a false designation of geographic origin claim.  The Dairy Farmers argue "an actor can only be directly liable for alleged falsehoods under the Lanham Act where 'they actively misrepresent the products or make a false or misleading representation about the products.'"  [Motion, Mem. in Supp. at 11 (emphases and some citations omitted) (quoting <u>In re Outlaw Laboratory, LLP</u>, 463 F. Supp. 3d 1068, 1081 (S.D. Cal. 2020)).] <u>In re Outlaw</u> concerned false advertising, not false designation of origin.  <u>See</u> 463 F. Supp. 3d at 1082.  The Dairy Farmers, however, argue <u>In re Outlaw</u> is applicable for a false designation of geographic origin claim because "the fundamental element of both claims is an underlying falsehood[.]"  [Reply at 8.]  The Dairy Farmers misunderstand.

To state a claim under § 1125(a)(1)(A), the plaintiff must sufficiently allege that the defendant "'(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of [its] goods or services.'" AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp., 748 F. App'x 115, 118 (9th Cir. 2018) (alterations in AECOM) (quoting Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007)).  Stated another way that is pertinent here, Plaintiff need only allege that the Dairy Farmers used in commerce any word (or words) which is likely to cause confusion as to the geographic origin of their milk products by another person.  See § 1125(a)(1)(A).

Here, Plaintiff alleges Defendants placed the milk products containing false designations of geographic origin in interstate commerce.  See First Amended Complaint at ¶¶ 42–45.[2] Plaintiff asserts Hollandia, Heritage, and Saputo each processes their milk products and applies the labels on the mainland and sends the milk products to MGD in Hawai`i.  See id. at ¶ 17. Plaintiff therefore satisfies the first element.

_____

[2] In considering a motion for judgment on the pleadings, this Court accepts the factual allegations of the complaint as true.  See Gregg v. Hawai`i, Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017).

Plaintiff further alleges the labels that Hollandia, Heritage, and Saputo each place on the milk products labels say, "Hawaii's Dairy" and "Made with Aloha," [id. at ¶ 17,] which are words that would "lead a reasonable consumer to believe that Defendants' milk products originate from farms in Hawaii[,]" [id. at ¶ 29]. Plaintiff also alleges "[m]any consumers in Hawaii consider milk originating from cows on dairy farms in Hawaii and processed in Hawaii to be fresher, healthier, and superior to milk from cows in the continental United States that is processed on the mainland and shipped over 2,000 miles to Hawaii." [Id. at ¶ 13.] It asserts many Hawai`i consumers, in a desire to support the local Hawai`i economy and make it become more sustainable, will pay a premium to purchase milk products they believe are based in Hawai`i over non-locally produced milk products. [Id.] Taking the allegations of the First Amended Complaint as a whole, Plaintiff has sufficiently alleged the second and third elements for a false designation of geographic origin claim. The Dairy Farmers' Motion is therefore denied as to that portion of Count I. Because Plaintiff has adequately alleged a claim for false designation of geographic origin, the Court need not analyze whether the Dairy Farmers are contributorily liable for this claim.

**B.  Direct Liability for False
    Advertising Under § 1125(a)(1)(B)**

To state a false advertising claim under 15 U.S.C.

§ 1125(a)(1)(B), a plaintiff must allege:

> (1) a false statement of fact by the defendant in
> a commercial advertisement [or promotion] about
> its own or another's product; (2) the statement
> actually deceived or has the tendency to deceive
> a substantial segment of its audience; (3) the
> deception is material, in that it is likely to
> influence the purchasing decision; (4) the
> defendant caused its false statement to enter
> interstate commerce; and (5) the plaintiff has
> been or is likely to be injured as a result of
> the false statement, either by direct diversion
> of sales from itself to defendant or by lessening
> of the goodwill associated with its products.

Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d

1069, 1071-72 (9th Cir. 2014) (quoting Southland Sod Farms v.

Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)).

The Dairy Farmers argue Plaintiff's § 1125(a)(1)(B)

claim fails because the statements are not literally false.

[Reply at 9.]  But, "[e]ven if an advertisement is not literally

false, relief is available . . . if it can be shown that the

advertisement has misled, confused, or deceived the consuming

public."  Southland Sod Farms, 108 F.3d at 1140 (collecting

cases).  Plaintiff alleges many Hawai`i consumers prefer local

milk products over non-local products and the labels the Dairy

Farmers put on the milk products would lead a reasonable Hawai`i

consumer to believe that the milk products originate from

Hawai`i when they do not.[3]  Plaintiff also alleges that, because
Hawai`i consumers view local milk as healthier, fresher, and
superior, they prefer to buy local.  Plaintiff asserts the sales
volume of its nearly identical milk products has been, and
continues to be, harmed and competition generally has been
negatively affected.  See First Amended Complaint at ¶¶ 13, 16-
17, 29, 11.

          The Dairy Farmers rely on In re Outlaw to argue they
cannot be directly liable for a false advertising claim because
they did not actively misrepresent the milk product or make a
false or misleading representation about the milk product.  See
Motion, Mem. in Supp. at 11-12.  In that case, the court
concluded that the plaintiff's Lanham Act claim failed because
the defendants were stores that only sold the challenged
products and did not formulate them or their labeling.  See In
re Outlaw, 463 F. Supp. 3d at 1081.  Moreover, the defendants'
conduct was not active false advertising because the defendants
only placed the products on their shelves for sale.  See id.

          Unlike In re Outlaw, where the stores only sold the
products without any involvement with the packaging or labeling,
here Plaintiff alleges the Dairy Farmers individually produced,

---

          [3] The Dairy Farmers do not contest whether labels constitute
as "commercial advertisements" or "promotions" under
§ 1125(a)(1)(B).

packaged, and labeled the milk products on the mainland then
sent them to Hawai`i for MGD to sell on the island.  See First
Amended Complaint at ¶¶ 10, 16-17.  Importantly, however,
Plaintiff does not allege that the Dairy Farmers had control
over, or involvement in, creating the statements on the labels.
Thus, the Court cannot determine whether the Dairy Farmers are
the entities that made "the specific, false statements at issue
in the litigation[,]" even if they ultimately applied the labels
to the products.  See In re Outlaw Lab'y, LP Litig., 424 F.
Supp. 3d 973, 980-81 (S.D. Cal. 2019) (citing AECOM Energy &
Constr., Inc. v. Morrison Knudsen Corp., 748 F. App'x 115, 119
(9th Cir. 2018)); see also Lasoff v. Amazon.com Inc, CASE
NO. C16-151 BJR, 2017 WL 372948, at *8 (W.D. Wash. Jan. 26,
2017) ("the misrepresentations of which he complains **originate**
with third-party vendors, not with Defendant" (emphasis added)),
*aff'd*, 741 F. App'x 400 (2018).

Accordingly, Plaintiff's direct liability claim for
false advertising fails.  See Gregg, 870 F.3d at 887 ("A
judgment on the pleadings is properly granted when, taking all
the allegations in the pleadings as true, the moving party is
entitled to judgment as a matter of law." (citation and internal
quotation marks omitted)).  Because Plaintiff's claim could be
saved by amendment, Plaintiff is granted leave to amend this
claim.  See Tudela v. Hawai`i State Bd. of Educ., CIV. NO. 21-

14

00188 LEK-WRP, 2021 WL 6052265, at *4 (D. Hawai`i Dec. 21, 2021)
("In considering a motion for judgment on the pleadings, the
district court has discretion . . . to grant leave to amend."
(citation omitted)).

### C.  Contributory Liability for False Advertising Under § 1125(a)(1)(B)

The Ninth Circuit has not articulated a standard for
contributory false advertising.  But, courts within the circuit,
including one in this district court, have implemented a
standard used in the Eleventh Circuit.  See Gilliam v. Galvin,
CIVIL NO. 19-00127 JAO-RT, 2019 WL 6718665, at *5 (D. Hawai`i
Dec. 10, 2019); Diamond Resorts Int'l, Inc. v. Reed Hein &
Assocs., LLC, Case No.: 2:17-cv-03007-APG-VCF, 2019 WL 6310717,
at *6 & nn.76-77 (D. Nev. Nov. 25, 2019).  This Court follows
the other courts in this circuit in using the standard set forth
by the Eleventh Circuit.

> Under the Eleventh Circuit's standard, "[f]irst,
> the plaintiff must show that a third party in
> fact directly engaged in false advertising that
> injured the plaintiff.  Second, the plaintiff
> must allege that the defendant contributed to
> that conduct either by knowingly inducing or
> causing the conduct, or by materially
> participating in it."  Duty Free Ams., Inc. v.
> Estee Lauder Cos., Inc., 797 F.3d 1248, 1277
> (11th Cir. 2015).  The second prong requires a
> plaintiff to "allege that the defendant actively
> and materially furthered the unlawful conduct—
> either by inducing it, causing it, or in some
> other way working to bring it about."  Id.
> (citation omitted).

15

<u>Gilliam</u>, 2019 WL 6718665, at *5 (alteration in <u>Gilliam</u>)

(footnote omitted).

> [A] plaintiff may be able to make out the
> participation prong of a contributory false
> advertising claim by alleging that the defendant
> directly controlled or monitored the third
> party's false advertising.  <u>See</u> <u>Perfect 10, Inc.</u>
> <u>v. Visa Int'l Serv. Ass'n</u>, 494 F.3d 788, 807 (9th
> Cir. 2007).  It is also conceivable that there
> could be circumstances under which the provision
> of a necessary product or service, without which
> the false advertising would not be possible,
> could support a theory of contributory liability.
> <u>See</u> <u>Inwood Labs., Inc.[v. Ives Labs., Inc.]</u>, 456
> U.S. [844,] 854–55, 102 S. Ct. 2182 [(1982)].  In
> determining whether a plaintiff has adequately
> alleged facts to support such a claim, we look to
> whether the complaint suggests a plausible
> inference of knowing or intentional
> participation, examining "the nature and extent
> of the communication" between the third party and
> the defendant regarding the false advertising;
> "whether or not the [defendant] explicitly or
> implicitly encouraged" the false advertising;
> whether the false advertising "is serious and
> widespread," making it more likely that the
> defendant "kn[ew] about and condone[d] the acts";
> and whether the defendant engaged in "bad faith
> refusal to exercise a clear contractual power to
> halt" the false advertising.  <u>See</u> <u>Mini Maid</u>
> <u>Servs. Co. [v. Maid Brigade Sys., Inc.]</u>, 967 F.2d
> [1516,] 1522 [(11th Cir. 1992)].

<u>Duty Free</u>, 797 F.3d at 1277–78 (some alterations in <u>Duty Free</u>).

Plaintiff alleges "MGD purchases, distributes, and

sells in Hawaii Mainland Milk Products with false designations

of origin and/or false or misleading descriptions or

representations of fact" and it "promotes and advertises those

products on its website."  [First Amended Complaint at ¶ 41.]

16

Plaintiff incorporates pictures of MGD's website, which includes
a web page that has the title, "AN iSLAND TRADiTiON," and states
"[f]or over 120 years Meadows Gold has provided quality milk
. . . for generations of Hawaii's families and communities[,]"
and MGD is "[p]roud to be locally owned and operated . . . ."
[Id. at ¶ 24 (Figure 5) (emphasis in original).]   However,
Plaintiff asserts "MGD did not exist until April 2020, and at no
time in its existence did it source any of the contents of its
Mainland Milk Products from any cows or dairy farms in Hawaii."
[Id. at ¶ 30.]   MGD's actions allegedly "caused and continue to
cause significant harm to [Plaintiff], including but not limited
to the diversion of sales . . . ."   [Id. at ¶ 35.]   As such, for
purposes of its contributory false advertising claim, Plaintiff
has sufficiently alleged MGD engaged in false advertising that
caused injury.

Plaintiff alleges Hollandia, Heritage, and Saputo each
knew that its respective milk products were not sourced from
Hawai`i and that the labels they applied to those products were
false, misleading, and/or deceptive, but supplied the milk
products to MGD nonetheless.   See First Amended Complaint at
¶¶ 56-57.   Plaintiff, however, does not adequately allege that
the Dairy Farmers "intended to participate or actually knew
about the false advertising."   See Duty Free, 797 F.3d at 1277
(citation and internal quotation marks omitted).   Although the

17

Dairy Farmers labeled their products with packaging that said, "Hawaii's Dairy" and "Made with Aloha," that alone does not "suggest[] a plausible inference of knowing or intentional participation." See id. at 1278.[4]  Stated differently, Plaintiff alleges the Dairy Farmers participated insofar as they labeled and packaged the products, but Plaintiff does not allege "the nature and extent of the communications between" the Dairy Farmers and MGD regarding the statements. See id. (citation and internal quotation marks omitted).  Thus, Plaintiff fails to allege the Dairy Farmers "**materially** participat[ed]" in the false advertising. See id. at 1277 (emphasis added).

Plaintiff also fails to plead with particularity that the Dairy Farmers had the requisite knowledge.  Without more, there is not a plausible inference that the Dairy Farmers possessed "the necessary state of mind." See id. (citation omitted).  Ultimately, Plaintiff do not sufficiently allege the Dairy Farmers induced, caused, or worked to bring about the alleged misleading statements. See id. (citation omitted). Thus, Plaintiff has not plausibly alleged a contributory liability claim for false advertising against the Dairy Farmers.

---

[4] Plaintiff alleges one of Saputo's products has an additional label that states MGD manufactures fresh milk in Hawai`i.  See First Amended Complaint at ¶ 23 & Figure 4. However, Plaintiff does not allege that MGD does not manufacture any milk in Hawai`i.

But, because the claim may be saved by amendment, Plaintiff is granted leave to amend this claim.

## II.   **Unfair Method of Competition Under Chapter 480 (Count II)**

An unfair method of competition claim requires allegations of: "(1) a violation of [Haw. Rev. Stat.] Chapter 480; (2) an injury to the plaintiff's business or property that flows from the defendant's conduct that negatively affects competition or harms fair competition; and (3) proof of damages." Field, Tr. of Est. of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n, 143 Hawai`i 362, 372, 431 P.3d 735, 745 (2018) (citation omitted)).  A violation of Chapter 480 can occur when a defendant engages in unfair methods of competition. See id. at 143 Hawai`i at 373, 431 P.3d at 746.  "Competitive conduct is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id. (brackets, citation, and internal quotation marks omitted).

The Dairy Farmers argue Plaintiff has not met its burden because it does not "allege how the Dairy Farmers engaged in 'unfair competition.'"  [Motion, Mem. in Supp. at 18.]  The Court agrees with the Dairy Farmers.  Plaintiff has not sufficiently alleged that the Dairy Farmers engaged in conduct more than labeling and packaging their milk product. Specifically, Plaintiff has not adequately alleged that the

19

Dairy Farmers had any involvement in the alleged misleading statements other than packaging and labeling the products. Count II is therefore dismissed.  Plaintiff is granted leave to amend this claim, however, because the claim may be saved by amendment.

## III.  <u>False Advertising Under § 708-871 (Count III)</u>

Haw. Rev. Stat. § 708-871(1) states:

A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

Count III fails for the same reason Plaintiff's false advertising claim under the Lanham Act fails.  Plaintiff has not sufficiently alleged with particularity that the Dairy Farmers had control over, or involvement in, creating the statements on the labels.  Accordingly, this claim is dismissed, but leave to amend is granted.

## IV.  <u>Deceptive Trade Practices Under Chapter 481A (Count IV)</u>

Haw. Rev. Stat. § 481A-3 states, in relevant part:

(a)  A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

.  .  .  .

(2)  Causes likelihood of confusion or of misunderstanding as to the source,

sponsorship, approval, or certification of
goods or services;

(3)  Causes likelihood of confusion or of
misunderstanding as to affiliation,
connection, or association with, or
certification by, another;

(4)  Uses deceptive representations or
designations of geographic origin in
connection with goods or services;

. . . .

Here, Plaintiff alleges a plausible claim under
§ 481A-3 for similar reasons as its false designation of
geographic origin claim under the Lanham Act.  That is,
Plaintiff alleges the labels and statements would lead a
reasonable consumer to believe that the products originate from
Hawai`i, and the Dairy Farmers used those labels and statements
insofar as they packaged, labeled, and shipped the milk products
to Hawai`i.  The Dairy Farmers' Motion is therefore denied as to
Count IV.

## CONCLUSION

On the basis of the foregoing, the Dairy Farmers'
Motion to Dismiss and for Judgment on the Pleadings, filed on
June 9, 2022 is HEREBY GRANTED IN PART AND DENIED IN PART.  The
Motion is GRANTED to the extent that: (1) Count I is DISMISSED
as to Plaintiff's direct liability claim for false advertising
and as to Plaintiff's contributory liability claim for false
advertising; (2) Count II is DISMISSED; and (3) Count III is

DISMISSED.  The Motion is DENIED to the extent that: (1) the portion of Count I alleging a direct liability claim for false designation of geographic origin survives dismissal; (2) the dismissal of Count I as to Plaintiff's direct liability claim for false advertising and Plaintiff's contributory liability claim for false advertising is WITHOUT PREJUDICE; (3) the dismissal of Counts II and III are WITHOUT PREJUDICE; and (4) Count IV survives dismissal.

Plaintiff may file a second amended complaint by **February 1, 2023**.  If Plaintiff fails to do so, this case will proceed as to the claims in the First Amended Complaint that survived dismissal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 11, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**HAWAII FOODSERVICE ALLIANCE, LLC VS. MEADOW GOLD DAIRIES HAWAII, LLC, ET AL**; CV 21-00460 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART THE DAIRY FARMERS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS