UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII FOODSERVICE ALLIANCE, LLC, A HAWAII LIMITED LIABILITY COMPANY;<br><br>        Plaintiff,<br><br>    vs.<br><br>MEADOW GOLD DAIRIES HAWAII, LLC, A HAWAII LIMITED LIABILITY COMPANY;  HOLLANDIA DAIRY, INC., A CALIFORNIA CORPORATION; HERITAGE DISTRIBUTING COMPANY, SAPUTO DAIRY FOODS USA, LLC, A DELAWARE CORPORATION;<br><br>        Defendants. | CIV. NO. 21-00460 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART THE
SUPPLIER DEFENDANTS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

On February 12, 2024, Defendants Hollandia Dairy, Inc. ("Hollandia"), Heritage Distributing Company doing business as Ninth Avenue Foods ("Heritage"), and Saputo Dairy Foods USA, LLC ("Saputo" and collectively "the Supplier Defendants") filed their Amended Motion for Partial Summary Judgment ("Motion"). [Dkt. no. 177.] Plaintiff Hawaii Foodservice Alliance, LLC ("Plaintiff") filed its memorandum in opposition on February 26, 2024, and the Supplier Defendants filed their reply on March 11, 2024. [Dkt. nos. 181, 189.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court

for the District of Hawaii ("Local Rules"). The Supplier
Defendants' Motion is hereby granted in part and denied in part
for the reasons set forth below. The Motion is denied as to the
following portions of Plaintiff's claims based on the use of the
Relevant Text on Defendant Meadow Gold Dairies Hawaii, LLC's
("MGDH") products:[1] Plaintiff's Lanham Act false designation of
geographic origin claim against Heritage and Saputo based on
direct liability; Plaintiff's Lanham Act false advertising claim
against Saputo based on direct liability; Plaintiff's Lanham Act
false advertising claim against Heritage based on contributory
liability; and Plaintiff's state law claims against Heritage and
Saputo. The Motion is granted as to all of Plaintiff's claims
against the Supplier Defendants based on the Hawai`i-Themed
Images and Phrases on MGDH products; and all of Plaintiff's
claims against Hollandia based on the alleged use of the
Relevant Text. Thus, Hollandia shall be terminated as a party.

**BACKGROUND**

The crux of this case is that Plaintiff alleges MGDH's
use of phrasing and imagery suggesting that Meadow Gold brand
products are sourced in Hawai`i is misleading and deceptive
because Meadow Gold products contain milk and other products,
such as whipping cream, imported from the continental United

---

[1] See *infra* Background Section for the definition of "the
Relevant Text."

States ("Mainland Milk Products"). Hollandia, Heritage, and Saputo each supplies products to MGDH. [Second Amended Complaint, filed 2/1/23 (dkt. no. 83), at ¶¶ 7-9; Defendants' Answer to Second Amended Complaint [Dkt. 83], filed 3/1/23 (dkt. no. 88) ("Answer"), at ¶ 5 (admitting those portions of Plaintiff's ¶¶ 7-9).]

Plaintiff initiated this action on November 24, 2021. See Complaint, filed 11/24/21 (dkt. no. 1).[2] The operative pleading is Plaintiff's Second Amended Complaint, which asserts the following claims: direct and contributory liability for false designation of origin/association and false advertising, in violation of the Lanham Act, Title 15 United States Code Section 1125(a)(1) ("Count I");[3] an unfair methods of competition claim, in violation of Hawai`i Revised Statutes Chapter 480 ("UMOC" and "Count II"); a false advertising claim, pursuant to Hawai`i Revised Statutes Section 708-871 and Section 603-23.5

---

[2] Plaintiff filed its First Amended Complaint on April 18, 2022. [Dkt. no. 49.]

[3] Plaintiff's description of Count I also refers to unfair competition. See Second Amended Complaint at pg. 23. This Court does not construe Count I as alleging an unfair competition claim separate from Plaintiff's false designation of origin/association claims and its false advertising claims. Rather, Plaintiff merely notes that the purposes of such claims is to prevent unfair competition in commerce. See id. at ¶¶ 61-63.

("Count III"); and a deceptive trade practices claim, pursuant to Hawai`i Revised Statutes Chapter 481A ("Count IV").

On January 31, 2024, partial summary judgment was granted in favor of MGDH. See Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, filed 1/31/24 (dkt. no. 176) ("1/31/24 Order").[4] Partial summary judgment was granted in favor of MGDH because this Court ruled that the laches doctrine applied to all of Plaintiff's claims against MGDH based on the Hawai`i-Themed Images and Phrases, and Defendants' request for summary judgment in favor of MGDH was denied as to Plaintiff's claims based on the use of the portion of the Dairymen's Text which represents that Meadow Gold products are manufactured fresh in Hawai`i. 1/31/24 Order, 2024 WL 363268, at *16-17. "The Hawai`i-Themed Images and Phrases" refers to "the use of the Lani Moo mascot and the 'Hawaii's Dairy' tagline, as well as to other images and phrases that suggest a connection to Hawai`i without making a representation about origin, including 'MOOhalo,' 'Made with Aloha,' and notations of the historical connection with the Dairymen's Association." Id. at *13. "The Dairymen's Text" refers to the

---

[4] The 1/31/24 Order is also available at 2024 WL 363268. The 1/31/24 Order addressed the Motion for Summary Judgment filed by MGDH, Hollandia, Heritage, and Saputo (all collectively "Defendants") on July 24, 2023 ("Defendants Motion"), [dkt. no. 123]. See 1/31/24 Order, 2024 WL 363268, at *1.

following statement that was used on certain Meadow Gold brand products sold in Hawai`i:

> In 1897 seven O`ahu dairy farms united as the Dairymen's Association, Ltd, to manufacture fresh milk for the community. Through the support of Hawai`i families, we grew to become Meadow Gold Dairies in 1959. **Today we operate statewide and continue to manufacture fresh milk, dairy, juice and nectar products in Hawai`i.** Generations of loyal Island families enable us to maintain our tradition of giving back to the communities we serve.

Id. at *5-6 (emphasis added). This Court found that the portion of the Dairymen's Text noted above in bold "contains an express representation about the origin of the products." Id. at *14. That portion of the Dairymen's Text will be referred to in this Order as "the Relevant Text." The Hawai`i-Themed Images and Phrases and the Relevant Text will be referred to collectively as the "Hawai`i-Themed Content."

Defendants' request for summary judgment in favor of the Supplier Defendants was denied because the laches defense was personal to MGDH, and any statute of limitations defense the Supplier Defendants would assert would be distinct from MGDH's defenses that were addressed in the 1/31/24 Order. Id. at *16. In the instant Motion, the Supplier Defendants seek summary judgment in their favor as to all of Plaintiff's claims against them based on the effect of the rulings in the 1/31/24 Order and

because the Supplier Defendants argue Plaintiff cannot establish the required elements of its claims.

## DISCUSSION

### I.   Plaintiff's Request to Strike

At the outset, this Court must address Plaintiff's argument that portions of the Supplier Defendants' Motion should be stricken because those portions violate prior court orders. See Mem. in Opp. at 11-12. The dispositive motions deadline was October 20, 2023. See Second Amended Rule 16 Scheduling Order, filed 4/3/23 (dkt. no. 104), at ¶ 6. On October 20, 2023, the Supplier Defendants filed a motion for partial summary judgment ("10/20/23 Motion"). [Dkt. no. 158.] This Court informed the parties that it would not act upon the 10/20/23 Motion until Defendants' Motion was ruled upon. See Minute Order, filed 10/23/23 (dkt. no. 163). Shortly before the 1/31/24 Order was issued, this Court gave the Supplier Defendants until February 12, 2024 to file an amended version of the 10/20/23 Motion "that incorporate[d] this Court's rulings on Defendants' Motion." See Minute Order, filed 1/29/24 (dkt. no. 174) ("1/29/24 EO"), at PageID.174.

Plaintiff argues the instant Motion raises new arguments that neither were raised in the 10/20/23 Motion nor address the rulings 1/31/24 Order, and Plaintiff urges this Court to strike those arguments. Plaintiff correctly points out

6

that the instant Motion addresses claims which were not
addressed in the 10/20/23 Motion: the portions of Count I
alleging direct liability and contributory liability for false
designation of geographic origin; and Count IV, the Chapter 481A
deceptive trade practices claim. Compare Motion, Mem. in Supp.
at 20-24, with 10/20/23 Motion, Mem. in Supp. at 11-19 (analysis
section). Plaintiff also argues the Supplier Defendants raise
new arguments regarding causation and damages as to claims that
were addressed in the 10/20/23 Motion. [Mem. in Opp. at 11.]

     The Supplier Defendants appear to acknowledge that the
Motion raises new arguments that are not directly based upon the
1/31/24 Order, but they argue the new arguments were permissible
because the new arguments incorporate the rulings in the 1/31/24
Order because the arguments respond to the way the rulings
"changed the litigation landscape" of the case. See Reply at 7
n.4. Although this a broad interpretation of the leave to amend
that this Court granted the Supplier Defendants in the 1/29/24
EO, it is not an unreasonable interpretation. Moreover, the new
arguments are more appropriately addressed in a motion for
summary judgment than at trial. Plaintiff's request to strike
the new arguments in the Motion is therefore denied.

## II.  **Effect of the Grant of Partial**
## **Summary Judgment in Favor of MGDH**

This Court next turns to the issue of how the grant of partial summary judgment in favor of MGDH affects Plaintiff's claims against the Supplier Defendants. The Supplier Defendants argue they cannot be held liable for any alleged injury caused by the use of the Hawai`i-Themed Images and Phrases because "they were simply printing Hawai`i-Themed Content that MGD[H] was legally entitled (expect potentially with respect to the Relevant Text) to use. It would be bizarre and inequitable to hold the printer liable for content its customer (MGD[H]) was entitled to distribute." Motion, Mem. in Supp. at 2; see also id. at 12. Plaintiff contends that the grant of summary judgment in favor of MGDH based on laches "has no bearing on the Motion." [Mem. in Opp. at 13.] Plaintiff argues the fact that it is barred from pursuing claims based on the Hawai`i-Themed Images and Phrases against MGDH "does not immunize [the Supplier Defendants] from direct liability to [Plaintiff] for their roles in the development, procurement, and use of that same content on their products," and does not preclude Plaintiff from establishing, for purposes of its contributory claims against the Supplier Defendants that MGDH's use of the Hawai`i-Themed Images and Phrases violated Section 1125. [Id.] Plaintiff's arguments are misplaced.

8

A.   **Count I — Lanham Act Claims**

The error in Plaintiff's argument is most apparent in relation to its Lanham Act claims based on contributory liability. The Supplier Defendants argue they "cannot 'contribute' to a Lanham Act violation that never occurred." [Motion, Mem. in Supp. at 17.] This Court agrees.

Although the Ninth Circuit has not addressed the issue, the Tenth Circuit has stated in the context of Lanham Act trademark infringement claims that "[v]icarious and contributory liability must be predicated on some **direct** infringement by the third party." 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1249 (10th Cir. 2013) (some citations omitted) (emphasis in original) (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:170 (4th ed. 2013) ("By definition, there can be no liability for contributory infringement unless there is direct infringement.")). Some district courts have followed this rule in trademark infringement cases. See, e.g., Monbo v. Nathan, 623 F. Supp. 3d 56, 127 (E.D.N.Y. 2022); Hetronic Int'l, Inc. v. Hetronic Germany GmbH, Case No. CIV-14-650-F, 2019 WL 3003679, at *35 (W.D. Okla. Mar. 22, 2019); Nat'l Ass'n of Forensic Couns., Inc. v. Narconon Int'l, No. CIV-14-187-RAW, 2015 WL 5157538, at *6 (E.D. Okla. Sept. 2, 2015). At least one district court has applied that rule in a Lanham Act false advertising case. See

9

<u>Concordia Pharms. Inc., S.À.R.L. v. Winder Lab'ys, LLC</u>, Civil Action No. 2:16-cv-00004-RWS, 2021 WL 3573118, at *11 (N.D. Ga. Feb. 17, 2021) ("Accordingly, Plaintiffs have not established an underlying direct false advertising claim against a third party sufficient to support a claim for contributory false advertising."). This Court finds these cases persuasive and concludes that Plaintiff cannot prevail on its Lanham Act claims against the Supplier Defendants based on contributory liability unless it can prove that its underlying claim against MGDH based on direct liability.[5]

Plaintiff argues the 1/31/24 Order does not preclude Plaintiff's Lanham Act claims against the Supplier Defendants based on contributory liability because the order "does not establish that direct violations of Section 1125 by MGD[H] related to the 'Hawaii-Themed Images and Phrases' never occurred. It simply bars [Plaintiff] from obtaining judicial relief against MGD[H]." [Mem. in Opp. at 13.] Plaintiff's position is that, although it cannot obtain relief against MGDH, it can still establish that MGDH violated Section 1125 in order

_____

[5] The Supplier Defendants argue that, unlike contributory false advertising, there is no claim for contributory false designation of geographic origin. [Motion, Mem. in Supp. at 21.] As discussed, _infra_, Discussion Section II.B.1.d., it is not necessary to address this argument.

to prove its contributory liability claims against the Supplier Defendants. Plaintiff's argument is misplaced.

In the 1/31/24 Order, this Court stated: "The affirmative defense of laches 'is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that **those who sleep on their rights, lose them.**'" 2024 WL 363268, at *10 (emphasis added) (quoting Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 997 (9th Cir. 2006) (per curiam)). Plaintiff did not merely lose the ability to obtain a remedy against MGDH for its use of the Hawai`i-Themed Images and Phrases, Plaintiff lost any rights it may have had under the Lanham Act regarding the use of the Hawai`i-Themed Images and Phrases. Moreover, permitting MGDH to prove contributory claims against the Supplier Defendants by establishing that MGDH's use of the Hawai`i-Themed Images and Phrases violated Section 1125 would allow Plaintiff to avoid the effect of the laches doctrine. Therefore, as to Plaintiff's Lanham Act claims based on contributory liability for MGDH's use of the Hawai`i-Themed Images and Phrases, there is no genuine issue of material fact, and those claims fail as a matter of law. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Summary judgment is granted in favor of the Supplier Defendants

11

to Plaintiff's Lanham Act claims based on contributory liability
for MGDH's use of the Hawai`i-Themed Images and Phrases.

The Court now turns to Plaintiff's claims based on
direct liability for MGDH's use of the Hawai`i-Themed Images and
Phrases.

### 1. Direct Liability for False Designation of Geographic Origin Under Section 1125(a)(1)(A)

A false designation of geographic origin claim under
Section 1125(a)(1)(A) requires proof that "the defendant
'(1) use[d] in commerce (2) any word, false designation of
origin, false or misleading description, or representation of
fact, which (3) is likely to cause confusion or misrepresents
the characteristics of [its] goods or services.'" [Order
Granting in Part and Denying in Part the Dairy Farmers' Motion
to Dismiss and for Judgment on the Pleadings, filed 1/11/23
(dkt. no. 82) ("1/11/23 Order"), at 10 (some internal quotation
marks omitted) (quoting AECOM Energy & Constr., Inc. v. Morrison
Knudsen Corp., 748 F. App'x 115, 118 (9th Cir. 2018)
(alterations in AECOM)).[6] In the 1/31/24 Order, this Court ruled
that the Hawai`i-Themed Images and Phrases "suggest a connection
to Hawai`i without making a representation about origin." 2024

---

[6] The 1/11/23 Order is also available at 2023 WL 159907. The
1/11/23 Order referred to Hollandia, Heritage, and Saputo as
"the Dairy Farmers." See 2023 WL 159907, at *1.

WL 363268, at *13. Because the Hawai`i-Themed Images and Phrases
do not represent that the milk in those products came from cows
located in Hawai`i, the Supplier Defendants' use of the Hawai`i-
Themed Images and Phrases in connection with MGDH's products did
not constitute either a false or misleading description or a
false or misleading representation of fact. Thus, Plaintiff
cannot establish this element of its false designation of
geographic origin claim against the Supplier Defendants.[7] There
is no genuine issue of material fact, and that portion of
Count I fails as a matter of law. Summary judgment is granted in
favor of the Supplier Defendants to Plaintiff's false
designation of geographic origin claim based on direct liability
for the use of the Hawai`i-Themed Images and Phrases.

### 2. Direct Liability for False Advertising Under Section 1125(a)(1)(B)

A false advertising claim under Section 1125(a)(1)(B)
requires proof of:

> (1) a false statement of fact by the defendant in
> a commercial advertisement [or promotion] about
> its own or another's product; (2) the statement
> actually deceived or has the tendency to deceive
> a substantial segment of its audience; (3) the
> deception is material, in that it is likely to
> influence the purchasing decision; (4) the
> defendant caused its false statement to enter
> interstate commerce; and (5) the plaintiff has

---

[7] The Supplier Defendants' arguments regarding the other
elements of Plaintiff's false designation of geographic origin
claim are discussed, *infra*, Discussion Section II.B.1 as to
Plaintiff's claim based on the use of the Relevant Text.

> been or is likely to be injured as a result of
> the false statement, either by direct diversion
> of sales from itself to defendant or by lessening
> of the goodwill associated with its products.

1/11/23 Order, 2023 WL 159907, at *4-5 (alteration in 1/11/23

Order) (quoting Wells Fargo & Co. v. ABD Ins. & Fin. Servs.,

Inc., 758 F.3d 1069, 1071-72 (9th Cir. 2014)). As with

Plaintiff's false designation of geographic origin claim, the

Supplier Defendants' use of the Hawai`i-Themed Images and

Phrases on MGDH's products did not constitute a false statement

of fact. Thus, Plaintiff cannot establish this element of its

false advertising claim against the Supplier Defendants. There

is no genuine issue of material fact, and that portion of

Count I fails as a matter of law. Summary judgment is granted in

favor of the Supplier Defendants to Plaintiff's false

advertising claim based on direct liability for the use of the

Hawai`i-Themed Images and Phrases in connection with MGDH's

products.

     **B.**    **State Law Claims**

       **1.**   **Count II - UMOC**

    A UMOC claim under Hawai`i Revised Statutes

Section 480-2 requires proof of:

> "(1) a violation of [Haw. Rev. Stat.]
> Chapter 480; (2) an injury to the plaintiff's
> business or property that flows from the
> defendant's conduct that negatively affects
> competition or harms fair competition; and
> (3) proof of damages." Field, Tr. of Est. of

14

> Aloha Sports Inc. v. Nat'l Collegiate Athletic
> Ass'n, 143 Hawai`i 362, 372, 431 P.3d 735, 745
> (2018) (citation omitted). A violation of
> Chapter 480 can occur when a defendant engages in
> unfair methods of competition. See id. at 143
> Hawai`i at 373, 431 P.3d at 746. "Competitive
> conduct is unfair when it offends established
> public policy and when the practice is immoral,
> unethical, oppressive, unscrupulous or
> substantially injurious to consumers." Id.
> (brackets, citation, and internal quotation marks
> omitted).

1/11/23 Order, 2023 WL 159907, at *7 (alteration in 1/11/23

Order). Based on this Court's ruling that the Hawai`i-Themed

Images and Phrases "suggest a connection to Hawai`i without

making a representation about origin," 1/31/24 Order, 2024 WL

363268, at *13, Plaintiff cannot establish that the Supplier

Defendants' use of the Hawai`i-Themed Images and Phrases in

connection with MGDH's products either "offend[ed] established

public policy" or was "immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers." See

Field, 143 Hawai`i at 373, 431 P.3d at 746. Thus, Plaintiff

cannot establish that the Supplier Defendants violated Hawai`i

Revised Statutes Chapter 480. There is no genuine issue of

material fact, and that portion of Count II fails as a matter of

law. Summary judgment is granted in favor of the Supplier

Defendants as to Plaintiff's UMOC claim based on the use of the

Hawai`i-Themed Images and Phrases in connection with MGDH's

products.

### 2.   **Count III – False Advertising**

Hawai`i Revised Statutes Section 603-23.5 allows a corporation to "maintain an action to enjoin a continuance of any act in violation of section 708-871 and if injured thereby for recovery of damages." Hawai`i Revised Statutes Section 708-871(1) states:

> A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

Based on this Court's ruling that the Hawai`i-Themed Images and Phrases "suggest a connection to Hawai`i without making a representation about origin," 1/31/24 Order, 2024 WL 363268, at *13, Plaintiff cannot establish that the Supplier Defendants' use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products constitutes a false or misleading statement. See Haw. Rev. Stat. § 708-871(1). Thus, Plaintiff cannot establish this element of its state law false advertising claim against the Supplier Defendants. There is no genuine issue of material fact, and that portion of Count III fails as a matter of law. Summary judgment is granted in favor of the Supplier Defendants as to Plaintiff's state law false advertising claim based their use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products.

16

### 3.    __Count IV – Deceptive Trade Practices__

Based on this Court's ruling that the Hawai`i-Themed Images and Phrases "suggest a connection to Hawai`i without making a representation about origin," 1/31/24 Order, 2024 WL 363268, at *13, Plaintiff cannot establish that the Supplier Defendants' use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products constitutes a deceptive trade practice under Chapter 481A. Thus, there is no genuine issue of material fact, and that portion of Count IV fails as a matter of law. Summary judgment is granted in favor of the Supplier Defendants as to Plaintiff's Chapter 481A deceptive trade practices claim based their use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products.

### C.    __Ruling__

Based on the rulings in the 1/31/24 Order, summary judgment is granted in favor of the Supplier Defendants as to all of Plaintiff's claims based on the Supplier Defendants' use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products. The remainder of this Order addresses only Plaintiff's claims against the Supplier Defendants based on their use of the Relevant Text in connection with MGDH's products.

III. **Claims Based on the Use of the Relevant Text**

    A. **Hollandia**

        The Supplier Defendants present testimony that none of the products that Hollandia packaged for MGDH contained the Relevant Text. See Supplier Defendants' Amended Separate Concise Statement of Facts ("Supplier Defs.' CSOF"), filed 2/12/24 (dkt. no. 178), Declaration of Kurt Fey ("Fey Decl.") at ¶ 4; id., Declaration of Patrick Schallberger ("Schallberger Decl.") at ¶ 4.[8] Plaintiff disputes the Supplier Defendants' representations about Hollandia's use of the Relevant Text. See Supplier Defs.' CSOF at ¶ 3; Plaintiff's Concise Statement of Facts in Opposition to Supplier Defendants' Amended Motion for Partial Summary Judgment ("Plaintiff's CSOF"), filed 2/26/24 (dkt. no. 182), at ¶ 3. However, the only evidence that Plaintiff cites to support its position that there is a genuine dispute regarding Hollandia's use of the Relevant Text on products provided to MGDH is an MGDH answer to an interrogatory by Plaintiff. See Plaintiff's CSOF at ¶ 3 (citing Ex. 25 at Interrog. 1).

        Plaintiff's Interrogatory Number 1 asked MGDH to: "Identify each Milk Product that You sold or distributed bearing

_____

[8] Kurt Fey was the MGDH's President and General Manager from February 22, 2022 to January 31, 2024. [Fey Decl. at ¶ 1.] Patrick Schallberger is Hollandia's Chief Executive Officer. [Schallberger Decl. at ¶ 1.]

a Hawaii and Aloha Label from May 1, 2020 to the present[.]"
[Plaintiff's CSOF, Declaration of Kelly G. LaPorte ("LaPorte
Decl."), Exh. 25 (excerpt of MGDH's Fourth Amended Response to
Plaintiff Hawaii Foodservice Alliance, LLC's First Sets of
Requests for Production and Answers to Interrogatories to
Defendant Meadow Gold Dairies Hawaii, LLC ("MGDH's Fourth
Amended Answers to Interrogs.")) at PageID.2772.] Subject to
objections, MGDH responded with a list "contain[ing] product
descriptions for all Mainland Milk products containing milk from
Hollandia Dairy, Inc. ('Hollandia'), Heritage Distributing
Company dba Ninth Avenue Foods ('Heritage'), and Saputo Dairy
Foods USA, LLC ('Saputo') that MG[DH] sold or distributed
bearing a Hawaii and Aloha Label from May 1, 2020 to the
present[,]" id. at PageID.2773; see also id. at PageID.2774
(first list), as well as a second list of products that MGDH
argued were not relevant, id. at PageID.2774 & n.1. The Fey
Declaration includes a table of thirty-five of the items listed
in MGDH's answer to Plaintiff's Interrogatory Number 1. [Fey
Decl. at PageID.1719.] The table states which of the Supplier
Defendants, if any, packaged each item and whether the item's
packaging contained the Relevant Text. [Id.] According to the
table, none of the items packaged by Hollandia used the Relevant
Text.

19

Because Exhibit 25 is an excerpt of MGDH's Fourth Amended Answers to Interrogatories, Exhibit 25 does not include the definition of the term "Hawaii and Aloha Label." <u>See</u> <u>id.</u> at PageID.2770-71 (MGDH's objections to the definitions of: "'You' or 'Your'"; "'Mainland Produced Milk'"; and "'Mainland Packaged Milk'"). Plaintiff's requests for answers to interrogatories to the Supplier Defendants utilized the same definitions for the three terms that MGDH objected to in MGDH's Fourth Amended Answers to Interrogatories. <u>See</u> LaPorte Decl., Exh. 24 (Plaintiff's First Sets of Requests for Production and Answers to Interrogatories to each of the Supplier Defendants) at PageID.2722-23 (portion of Definition and Instructions section of request to Heritage). This Court therefore infers that Plaintiff used the same definitions for its requests for answers to interrogatories to MGDH. "'Hawaii and Aloha Label' refers to a Label that includes the words 'Hawaii' (or 'Hawai`i' or 'Hawaii's') and 'Aloha.'" [<u>Id.</u> at PageID.2722.] Based on this definition, MGDH's answer to Plaintiff's Interrogatory Number 1 does not represent that any Hollandia-packaged MGDH item utilized the Relevant Text.

Even viewing the record in the light most favorable to Plaintiff,[9] Hollandia has carried "its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (some citations omitted) (citing Celotex Corp. v. Catrett, --- U.S. ---, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)). Plaintiff was therefore required to "set forth, by affidavit or as otherwise provided in Rule 56, **specific facts** showing that there is a genuine issue for trial." See id. (emphasis in T.W. Elec.) (citations and internal quotation marks omitted). Plaintiff has not done so. This Court therefore finds that there is no genuine issue of material fact as to Plaintiff's claims against Hollandia. Insofar as Plaintiff's only remaining claims in this case are based upon the use of the Relevant Text, Plaintiff's claims against Hollandia fail as a matter of law because the products that Hollandia packaged for MGDH did not utilize the Relevant Text. Summary judgment is granted in favor of Hollandia as to all of Plaintiff's remaining claims against it. The

---

[9] In considering the Supplier Defendants' Motion, this Court must view the record in the light most favorable to Plaintiff as the nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th 849, 855 (9th Cir. 2021).

remaining portions of this Order will only address Plaintiff's claims against Heritage and Saputo.

**B.   Count I — Lanham Act Claims**

    **1.   Direct Liability for False Designation of Geographic Origin Under Section 1125(a)(1)(A)**

        **a.   Heritage's and Saputo's Goods**

The Supplier Defendants first argue a defendant can only be subject to direct liability for false designation of origin as to its own goods. [Motion, Mem. in Supp. at 20.] They point out that that Section 1125(a)(1)(A) establishes liability where the false designation of origin "is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin . . . of his or her goods[.]" In contrast, false advertising under Section 1125(a)(1)(B) refers to misrepresentations of "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . . ." The Supplier Defendants cite AvePoint, Inc. v. Power Tools, Inc., [Motion, Mem. in Supp. at 20-21,] in which the district court stated Section 1125(a)(1)(A), "by its plain terms, does not extend to misrepresentations regarding the geographic origin of another person's goods . . . ," 981 F. Supp. 2d 496, 518 (W.D. Va. 2013).

While the distinction between the language in Section 1125(a)(1)(A) and the language in Section 1125(a)(1)(B)

is apparent, the proposition stated in AvePoint does not appear
to have been considered by other federal courts. However, it is
not necessary for this Court to decide whether a defendant can
be held liable for false designation of origin regarding the
goods of another person because there is at least a genuine
issue of material fact as to whether the products that Heritage
and Saputo provided to MGDH were Heritage's and Saputo's goods.

It is undisputed that the Supplier Defendants provided
products to MGDH. See Answer at ¶ 5 (admitting that Hollandia,
Heritage, and Saputo "supply products to MGD[H]"). The
definitions applicable to Section 1125 does not include a
definition of "goods." See generally 15 U.S.C. § 1127 (titled
"Construction and definitions; intent of chapter"). However, the
definition of "use in commerce" is instructive regarding the
definition of "goods." Section 1127 states, in relevant part:

> The term "use in commerce" means the bona fide
> use of a mark in the ordinary course of trade,
> and not made merely to reserve a right in a mark.
> For purposes of this chapter, a mark shall be
> deemed to be in use in commerce—
>
> (1)  on goods when--
>
> (A)  it is placed in any manner on the
> goods or their containers or the
> displays associated therewith or on the
> tags or labels affixed thereto, or if
> the nature of the goods makes such
> placement impracticable, then on
> documents associated with the goods or
> their sale, and

> (B)   the goods are sold or transported
> in commerce[.]

Heritage and Saputo sold dairy products to MGDH. Section 1127 broadly defines commerce as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Viewing the record in the light most favorable to Plaintiff, there is a genuine issue of fact as to whether Heritage and Saputo sold their products to MGDH in commerce. The Relevant Text is a trademark of MGDH. It is a combination of words used by MGDH "to identify and distinguish [MGDH's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . . ." See id. (definition of "trademark"). In preparing the packaging for the dairy products that they sold to MGDH, Heritage and Saputo engaged in the bona fide use of MGDH's mark. See id. ("The term 'mark' includes any trademark, service mark, collective mark, or certification mark."); id. (definition of "use in commerce"). Thus, for purposes of the transactions between Heritage and MGDH and between Saputo and MGDH, there is a genuine issue of fact as to whether the dairy products that Heritage and Saputo packaged and sold to MGDH constitute Heritage's and Saputo's goods. This Court therefore rejects the Supplier Defendants' argument that Plaintiff's Section 1125(a)(1)(A) false designation of geographic origin claim based on direct liability fails as to Heritage and Saputo because the

24

claim is based on a representation regarding origin of another person's goods.

### b.  Interstate Commerce

The Supplier Defendants also argue Plaintiff's direct liability Section 1125(a)(1)(A) claim against Heritage and Saputo fails because they "cannot be said to have 'caused' the products to enter interstate commerce." See Motion, Mem. in Supp. at 21 (citation omitted). Section 1125(a)(1) only states: "Any person who, on or in connection with any goods . . . , or any container for goods, **uses in commerce** . . . any false designation of origin . . . , shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1) (emphasis added). The Ninth Circuit has interpreted Section 1125(a)(1)(B) as requiring a plaintiff to prove that "the defendant caused its false statement to enter interstate commerce[.]" See AECOM Energy, 748 F. App'x at 118 (quoting Wells Fargo, 758 F.3d at 1071). However, the Ninth Circuit has not interpreted Section 1125(a)(1)(A) in the same manner. See id. (stating that, as to Section 1125(a)(1)(A), the plaintiff "must prove that Defendants '(1) use[d] in commerce . . .'" (brackets in AECOM) (quoting Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007))). As previously noted, the definition of "commerce" is broad. Viewing the record in the light most favorable to

Plaintiff, this Court finds that there is at least a genuine issue of fact as to whether Heritage and Saputo used the Relevant Text "in commerce."

### c.   Damages

The Supplier Defendants next argue Plaintiff's direct liability Section 1125(a)(1)(A) claim against Heritage and Saputo fails because Plaintiff "has not been damaged, and is not likely to be damaged, by the alleged false association." [Motion, Mem. in Supp. at 21.] The Supplier Defendants point to deposition testimony that, when the prior owner of Meadow Gold Dairies - Dean Foods - went bankrupt, Plaintiff's share of the dairy distribution market increased from approximately forty percent to sixty-five percent. [Supplier Defs.' CSOF at ¶ 27 (citing Supplier Defs.' CSOF, Declaration of Erika L. Amatore ("Amatore Decl."), Exh. E (trans. excerpts of Chad Buck's 10/19/23 videotaped deposition ("Buck Depo.")) at 39:5-17).[10]] The Supplier Defendants also argue that, after MGDH assumed Dean Foods' operations in Hawai`i, Plaintiff "did not lose any customers, and retained its 65% market share." [Motion, Mem. in Supp. at 16 (citing Amatore Decl., Exh. E (Buck Depo.) at 132:14-133:10).]

---

[10] Chad Buck is Plaintiff's Manager. [Plaintiff's CSOF, Declaration of Chad Buck at ¶ 1.]

However, even if Plaintiff did not **lose customers** when MGDH assumed Dean Foods' operations, *i.e.*, during the period that MGDH used the Relevant Text, that fact does not preclude Plaintiff from establishing that MGDH's use of the Relevant Text prevented Plaintiff from **gaining even more customers**. Plaintiff has submitted the opinion of its damages expert, Dwight Duncan, CFA ("Duncan"), who opined that MGDH's lost profits as a result of the violations alleged in this case were $1,482,292. See LaPorte Decl., Exh. 23 at PageID.2615-17 (pages 5-7 of the Export Report of Dwight J. Duncan, CFA, dated 7/10/23 ("Duncan Report")).[11] The Supplier Defendants argue Duncan's opinions cannot create a triable issue of fact as to Plaintiff's injury because Duncan relied on a report by "Dr. Maronick" that is irrelevant and inadmissible. [Reply at 8.] The arguments that the Supplier Defendants raise regarding Duncan's opinions address issues regarding weight of the evidence and Duncan's credibility, and this Court cannot make such determinations in ruling on the Supplier Defendants' Motion. See Estate of Lopez ex rel. Lopez v. Gelhaus, 871 F.3d 998, 1009 n.10 (9th Cir. 2017) ("At the summary judgment stage, '[c]redibility

---

[11] Plaintiff's Exhibit 23 includes: the Declaration of Dwight J. Duncan, CFA; [dkt. no. 182-26 at PageID.2605-07;] the Duncan Report; [id. at PageID.2608-79;] and the Reply Expert Report of Dwight J. Duncan, CFA, dated 11/30/23 ("Duncan Reply Report"), [id. at PageID.2680-719].

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (alteration in Lopez) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))). In addition, this Court notes that Defendants have filed motions seeking the exclusion of Duncan's and Dr. Maronick's expert reports and testimony. See Defendants' Motion to Exclude Reports and Testimony of Dwight J. Duncan, filed 5/28/24 (dkt. no. 199); Defendants' Motion to Exclude Expert Reports and Testimony of Thomas J. Maronick, filed 5/28/24 (dkt. no. 201). Such motions are more appropriate to address the challenges to Duncan's and Dr. Maronick's testimony and opinions than the Supplier Defendants' Reply in support the instant Motion. This Court will consider Duncan's opinions in ruling on the Supplier Defendants' Motion, but this Court makes no ruling at this time regarding whether Duncan's opinions and testimony will be admissible at trial.

The Supplier Defendants also point to testimony that, even after Saputo and Heritage removed, or began to remove, the Hawai`i-Themed Content from the MGDH products they each packaged, the change did not result in a reduction of the demand for MGDH's products. [Motion, Mem. in Supp. at 9-10 (some citations omitted) (citing Fey Decl. at ¶ 11; Supplier Defs.' CSOF, Declaration of Dave Connor ("Connor Decl.") at ¶ 8;

28

Supplier Defs.' CSOF, Declaration of Steven Goldstein ("Goldstein Decl.") at ¶ 7).[12]] However, that testimony does not disprove Plaintiff's position that the use of the Relevant Text on MGDH products supplied and packaged by Heritage and Saputo caused Plaintiff to lose profits that Plaintiff would have been able to obtain if MGDH had never used the Relevant Text on products supplied and packaged by Heritage and Saputo.

Viewing the record in the light most favorable to Plaintiff, this Court finds that there is a genuine issue of material fact as to the issue of whether Plaintiff suffered damages as a result of the use of the Relevant Text on MGDH products supplied and packaged by Heritage and Saputo. Because this Court has found that there is a genuine issue of material fact as to Plaintiff's past damages, it is not necessary for this Court to address the Supplier Defendants' argument that Plaintiff cannot show a likelihood of future injury because of the changes in MGDH's labeling practices. See Motion, Mem. in Supp. at 16.

### d.   **Ruling**

This Court has rejected all of the Supplier Defendants' arguments regarding Plaintiff's direct liability

---

[12] Dave Connor is Saputo's Regional Manager, Sales. [Connor Decl. at ¶ 1.] Steven Goldstein is Heritage's Vice President and General Manager. [Goldstein Decl. at ¶ 1.]

false designation of geographic origin claim against Heritage and Saputo. Heritage and Saputo have not carried their "initial burden of identifying for the court the portions of the materials on file that [they] believe[] demonstrate the absence of any genuine issue of material fact." See T.W. Elec., 809 F.2d at 630. Heritage and Saputo are not entitled to summary judgment as to Plaintiff's direct liability false designation of geographic origin claim. Because Plaintiff has defeated summary judgment as to its claim for false designation of geographic origin based on direct liability, this Court need not analyze whether Heritage and Saputo are contributorily liable for this claim. Cf. 1/11/23 Order, 2023 WL 159907, at *4.

### 2. Direct Liability for False Advertising Under Section 1125(a)(1)(B)

#### a. Whether Saputo or Heritage Made the Statements in the Relevant Text

An essential element of Plaintiff's direct liability false advertising claim against Heritage and Saputo is that each entity "made 'the specific, false statement[] at issue in the litigation[,]' even if they ultimately applied the labels to the products." See 1/11/23 Order, 2023 WL 159907, at *5 (quoting In re Outlaw Lab'y, LP Litig., 424 F. Supp. 3d 973, 980-81 (S.D. Cal. 2019) (citing AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp., 748 F. App'x 115, 119 (9th Cir. 2018)). In the 1/11/23 Order, this Court recognized that Plaintiff could prove

30

this by establishing that Heritage and Saputo each "had control over, or involvement in, creating the statement[] on the labels." See id.

In the instant Motion, the Supplier Defendants argue Heritage and Saputo are entitled to summary judgment as to Plaintiff's direct liability false advertising claim because "[a]ll of the Supplier[ Defendants] testified the content of MGD[H]'s labels (apart from nutritional/regulatory information) was dictated by MGD[H], and there is no evidence to the contrary." [Motion, Mem. in Supp. at 14.]

For example, Saputo's designated representative under Federal Rule of Civil Procedure 30(b)(6), Monica Ciaramitaro ("Ciaramitaro"), testified that Saputo has

> a department in our organization that is focused on label regulations, and that's where -- Audrey DelMonte [("DelMonte")], our regulatory scientist, she resides in that department. And so they are responsible for ensuring [Food and Drug Administration ("FDA")] and – FDA compliance. So any federal regulation that mandates certain components of the label or the package, they're validating that. What they do not validate, however, is romance copy or branded contents from our customers.
>
> Our customers tell Saputo what to put in the graphics. We're ensuring that the right components are there so we're not in violation of any FDA regulations.

[Amatore Decl., Exh. C (trans. excerpts of Ciaramitaro's 6/23/23 videotaped remote deposition ("Ciaramitaro Depo.")) at 38-39.] Further,

> the regulatory scientist will also make sure we have accuracy in spelling.
>
> But what they do not do is determine romance copy.[13] That is a brand equity that is not something Saputo owns or is responsible for. So when our customers – MGD[H] is a great example -- when they give us their graphics with their brand equity on it, we are not checking and validating that because it's not ours to do anything with. But we are validating all the other components that are reviewed from a regulatory standpoint.

[Id. at 40-41.]

However, Plaintiff has submitted email correspondence between Saputo personnel and MGDH personnel indicating that Saputo suggested to MGDH that the Dairymen's Text be removed from MGDH products packaged by Saputo. On April 13, 2022, Meghan Chun ("Chun") of MGDH informed Connor and DelMonte that MGDH was "going to have to update [its] packaging on a few of the products [it] produce[d] with [Saputo] removing all 'Hawaii's Dairy' and 'Made with Aloha' marks." [LaPorte Decl., Exh. 6 at SAP000069-70 (email to Connor and DelMonte from Chun, dated 4/13/22).] Connor later wrote to Chun, stating: "We removed the

_____

[13] Ciaramitaro testified that "romance copy is a general term where the brand is talking about history or origin or telling a story to kind of tie the product to the consumer in a way. . . . It's the nonregulated content that goes on a package." [Amatore Decl., Exh. C (Ciaramitaro Depo.) at 41.]

clauses on both pieces of artwork. However, there is still a
concern with the language on the on the [sic] far left panel
(glamour shot) of the whipping cream, the wording we feel can be
miss-leading [sic]. Can you please let me have you [sic]
thoughts." [Id. at SAP000065 (part of email to Chun from Connor,
with copy to DelMonte, dated 5/16/22).] Chun responded by
sending an image of product packaging that included the
Dairymen's Text, and Chun asked if that was what Connor was
referring to. Connor confirmed that it was. [Id. at SAP000064-65
(email to Connor from Chun, with copy to DelMonte, dated
5/23/22); id. at SAP000063 (email from to Chun from Connor, with
copy to DelMonte, dated 5/23/22).] On May 25, 2022, Chun wrote:

> Hi Dave and Audrey,
>
> Thank you for red flagging that, can we replace
> that copy with the below:
>
> ***At home chefs love Meadow Gold's 36% heavy
> whipping cream! Add a touch of rich creaminess to
> homemade soups, sauces, mashed potatoes, eggs and
> salad dressings. Top your favorite berries and
> warm baked goods with a dollop of cool freshness.
> Whether it's sweet or savory, Meadow Gold heavy
> whipping Cream brings out the best in any dish
> for your `ohana.***
>
> Thank You,
> Megahn

[Id. at SAP000063 (email to Connor from Chun, with copy to
DelMonte, dated 5/25/22) (emphasis in original).] Viewing the
record in the light most favorable to Plaintiff, in particular

33

Plaintiff's Exhibit 6, this Court finds that there is a genuine issue of material fact as to whether Saputo had control over the use of the Relevant Text on the products that it packaged for MGDH.

The Supplier Defendants also present testimony that Heritage is legally obligated: to provide nutritional facts that are included in a customer's artwork and the ingredients statement; and to confirm that the product container states the correct volume amount. [Amatore Decl., Exh. B (trans. excerpts of Steven Harm Goldenstein, Jr.'s 5/23/23 videotape and videoconference deposition ("Goldenstein Depo.")) at 98-99.[14]] After Heritage had notice of this action, its labeling of MGDH products "continued at the guidance and direction of MGD[H]," and Heritage did not have the ability to change MGDH's labels without MGDH's direct. See id. at 121-22. Heritage acknowledges that it could have refused to supply dairy products to MGDH with the labels that MGDH wanted to use, but Heritage did not exercise that option. See id. at 122.

Plaintiff responds with:

-an email in which MGDH's vendor for the bottle sleeves for milk
    products asked "[w]ho at [Heritage] should review and
    approve these PDF proofs"; [LaPorte Decl., Exh. 9 at
    NAF000013 (email from Maria Lopez of Osiopack ("Lopez") to

---

[14] Steven Harm Goldenstein, Jr. was deposed as Heritage's Rule 30(b)(6) representative. See Amatore Decl., Exh. B (Goldenstein Depo.) at 1.

Joni Marcello, Mark Hardin, Tony McCash, and Thomas E.
Berry, dated 9/22/20);]

-an email in which Lopez asked Gary Ericks ("Ericks") to "let me
know if you need to review/approve as well";[15] [id., Exh. 10
at NAF000006 (email from Lopez to Joni Marcello and Ericks,
with copy to Mark Hardin and Thomas E. Berry, dated
9/23/20);]

-an email in which Brian Taylor, Heritage's Director of Quality
Systems ("Taylor"), approved proofs sent by Osiopack; [id.,
Exh. 11 at NAF000093-95 (emails between Taylor, Lopez,
Chun, Ericks, and Mark Hardin, dated 7/23/21);]

-emails in which Lopez states Osiopack would wait for Taylor's
and Chun's "final approval of the PDF proof," and Taylor
responds with his approval; [id., Exh. 33 at NAF000096
(emails dated 9/29/21 from Taylor and Lopez);] and

-an email in which Taylor approves the label for Meadow Gold
fourteen ounce two percent milk containers, [id., Exh. 33
at NAF000099 (email from Taylor to Lopez and Ericks, with
copy to Mark Hardin, dated 9/28/21)].

Plaintiff's Exhibits 9, 10, and 11 each contains product label
proofs that have the Dairymen's Text, including the Relevant
Text. See id., Exh. 9 at NAF000017-18; id., Exh. 10 at
NAF000011-12; id., Exh. 11 at NAF000095.

Although Heritage approved label proofs that included
the Relevant Text, the evidence that Plaintiff has provided does
not suggest that Heritage had any control over the use of the
Relevant Text in particular. The exhibits that Plaintiff relies
upon include discussion of: "a comma between 'VITAMIN A' and

---

[15] Ericks was Heritage's Director of Sales. See LaPorte
Decl., Exh. 11 at NAF000085 (email from Ericks to Lopez and
Chun, with copy to Mark Hardin and Brian Taylor, dated 7/28/21).

'PALMITATE' in the Ingredients list" for two percent milk; [id., Exh. 33 at NAF000097 (emails dated 9/29/21 between Ericks and Lopez);] and "[c]hang[ing] the less fat statement from 44% to 38%[,]" [id., Exh. 33 at NAF000100-02 (emails dated 8/5/21 between Ericks, Lopez, and Chun)]. The review and approval of these types of statements are consistent with Goldenstein's testimony about the scope of Heritage's review of the labels for the products it packaged for MGDH. Even viewing the record in the light most favorable to Plaintiff, Plaintiff has not identified any evidence that raises a genuine issue of fact and to whether Heritage had control over the use of the Relevant Text on the products that it packaged for MGDH. Plaintiff's direct liability false advertising claim against Heritage based on the use of the Relevant Text on MGDH products packaged by Heritage therefore fails as a matter of law.

**b.   Entry into Interstate Commerce**

The Supplier Defendants also argue Plaintiff's direct liability false advertising claim against Saputo based on the use of the Relevant Text on MGDH products fails because Saputo did not cause the Relevant Text to enter interstate commerce. [Motion, Mem. in Supp. at 15.] Ciaramitaro testified:

> Q.   In those years, in 2021 and 2022, Saputo knew that all the milk dairy products it was packaging into these 1-quart heavy whipping cream containers came from cows in California and not from Hawaii, true?

A.    Yes.

Q.    In 2021 and 2022, Saputo knew that
these products were being shipped to Hawaii for
sale to consumers in Hawaii, right?

A.    Meadow Gold manages -- again, like I
said before, they manage the pickup and
distribution of their products.

Q.    But Saputo knew that once Meadow Gold
picked them up, they were being shipped to Hawaii
for sale to consumers in Hawaii, right?

A.    Yes.

Amatore Decl., Exh. C (Ciaramitaro Depo.) at 88; see also id. at

22 ("As Saputo did not ship or distribute, the customer would

have picked up and managed any of that.").

Plaintiff argues there is at least a genuine issue of

fact as to whether Saputo caused the Relevant Text to enter

interstate commerce because: "'Commerce' under the Lanham Act

encompasses '(1) the channels of interstate commerce; (2) the

instrumentalities of interstate commerce, or persons and things

in interstate commerce . . . ; and (3) those activities that

substantially affect interstate commerce.'" [Mem. in Opp. at 17

(quoting Big Island Candies, Inc. v. Cookie Corner, 244 F. Supp.

2d 1086, 1096 (D. Haw. 2003)).] The district court in Big Island

Candies noted that, "[u]nder that definition, even a defendant

who is engaged solely in intrastate commerce may be held liable

under the Lanham Act if the plaintiff uses the asserted mark in

37

interstate commerce, as even the 'local use' of the challenged
product design or packaging may substantially affect the
strength of the plaintiff's mark." 244 F. Supp. 2d at 1096-97
(citing Thompson Tank & Mfg. Co. v. Thompson, 693 F.2d 991, 993
(9th Cir. 1982); Maier Brewing Co. v. Fleischmann Distilling
Corp., 390 F.2d 117, 119-20 (9th Cir. 1968)).

        Saputo did not place the MGDH products that it
packaged with the Relevant Text in channels of interstate
commerce, nor did Saputo place the products on instrumentalities
of interstate commerce. However, Saputo did provide those
products to persons in interstate commerce – i.e. MGDH, and the
sale of dairy products to MGDH for sale in Hawai`i was an
activity that substantially affected interstate commerce. See
id. at 1096 (citing United States v. Lopez, 514 U.S. 549, 558-
59, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995)). In Lopez, the
United States Supreme Court noted there have been

        a wide variety of congressional Acts regulating
        intrastate economic activity where [the Supreme
        Court] ha[s] concluded that the activity
        substantially affected interstate commerce.
        Examples include the regulation of intrastate
        coal mining; Hodel [v. Vir. Surface Mining &
        Reclamation Ass'n, 452 U.S. 264 (1981)],
        intrastate extortionate credit transactions,
        Perez [v. United States, 402 U.S. 146 (1971)],
        restaurants utilizing substantial interstate
        supplies, [Katzenbach v.] McClung, [379 U.S. 294
        (1964)], inns and hotels catering to interstate
        guests, Heart of Atlanta Motel, [Inc., v. United
        States, 379 U.S. 241 (1964)], and production and

38

consumption of homegrown wheat, <u>Wickard v.</u>
<u>Filburn</u>, 317 U.S. 111 (1942).

514 U.S. at 559–60. <u>Heart of Atlanta Motel</u> is instructive here.
In that case, the Supreme Court noted: "It is said that the
operation of the motel here is of a purely local character. But,
assuming this to be true, if it is interstate commerce that
feels the pinch, it does not matter how local the operation
which applies the squeeze." <u>Heart of Atlanta Motel</u>, 379 U.S. at
258 (brackets, citations, and internal quotation marks omitted).
"Thus the power of Congress to promote interstate commerce also
includes the power to regulate the local incidents thereof,
including local activities in both the States of origin and
destination, which might have a substantial and harmful effect
upon that commerce." <u>Id.</u>

Even though Saputo's packaging and labeling of MGDH
products occurred in California, Saputo was fully aware that the
products were ultimately intended for sale and/or distribution
in Hawai`i. Saputo's packaging and labeling are local incidents
of interstate commerce. This Court therefore concludes that, as
a matter of law, Saputo placed the products that it packaged for
MGDH into interstate commerce.

However, it is not enough that Saputo placed MGDH
**products** into interstate commerce; in order to prevail on its
direct liability false advertising claim against Saputo,

Plaintiff must establish that Saputo placed **the Relevant Text** into interstate commerce. <u>See</u> <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 n.3 (9th Cir. 1997) ("After the 1988 amendments, it is the statement itself, rather than the falsely advertised goods or services, that must be used in interstate commerce. <u>Compare</u> 15 U.S.C. § 1125 (1982) <u>with</u> 15 U.S.C. § 1125 (1988)."). The evidence cited *supra* Discussion Section II.B.2.a regarding the issue of whether Saputo had control over the use of the Relevant Text on the products that it packaged for MGDH is also sufficient to create a genuine issue of material fact for trial as to the issue of whether Saputo caused the Relevant Text to enter interstate commerce. To the extent that Saputo requests summary judgment on the ground that it did not cause the Relevant Text to enter interstate commerce, the Motion is denied.

### c. <u>Other Elements of the Claim</u>

The Supplier Defendants also argue Plaintiff's direct liability false advertising claim against Saputo fails as a matter of law because Plaintiff cannot prove that it has been or is likely to be injured because of the use of the Relevant Text on MGDH's products. [Motion, Mem. in Supp. at 15.] This argument is rejected for reasons stated in the analysis of Plaintiff's direct liability false designation of geographic origin claim against Heritage and Saputo. <u>See</u> *supra* Discussion § II.B.1.c.

The Supplier Defendants also argue "there is no
evidence that the Relevant Text (on an obscure side-panel
statement about Meadow Gold's production history) 'actually
deceived or has the tendency to deceive a substantial segment of
its audience;'" or "that 'the deception is material, in that it
is likely to influence the purchasing decision[.]'" [Motion,
Mem. in Supp. at 15.] Plaintiff points to the report of its
survey expert, and the analysis of Dr. Maronick's surveys
provided by Plaintiff's other experts as evidence of "the
consumer confusion created by [the] Supplier[ Defendants']
labels, including the Dairymen's Text." See Mem. in Opp. at 19-
20 (citing LaPorte Decl., Exh. 18(a) (An Empirical Analysis of
Hawaii Consumers' Perceptions of Claims Made on Meadow Gold
Dairies Hawaii, LLC's Milk and Dairy Containers by Thomas J.
Maronick, DBA, JD, dated 7/10/23 ("Maronick Report")) at 41;[16]
id., Exh. 19(a) (Supplemental Report in Rebuttal to Expert
Report of Dr. Itamar Simonson by Ronald Goodstein, Ph.D.
("Goodstein Report")) at 2, 35-37; id., Exh. 19(b) (Rebuttal
Report of Ronald C. Goodstein, Ph.D. in Response to Expert

---

[16] Plaintiff's Exhibit 18 includes: the Declaration of
Thomas J. Maronick, DBA; [dkt. no. 182-21 at PageID.2348-50;]
the Maronick Report; [id. at PageID.2351-2437;] and the Reply to
Expert Rebuttal Report of Sarah Butler, etc. by Thomas J.
Maronick, DBA, JD, dated 11/3/23 ("Maronick Reply Report"), [id.
at PageID.2438-64].

Report of John B. Tidwell, dated 1/26/24 ("Goodstein Reply Report")) at 22).[17]

Viewing the record in the light most favorable to Plaintiff, these reports raise a genuine issue of fact for trial as to the actual deception or tendency to deceive element and the materiality element of Plaintiff's direct liability false advertising claim against Saputo. As previously noted, the Supplier Defendants raise objections about Dr. Maronick's survey results and the opinions that rely upon his results, but those are more appropriately addressed in Plaintiff's motions to exclude the testimony and opinions. See *supra* Discussion § II.B.1.c; see also Defendants' Motion to Exclude Reports and Testimony of Ronald Goodstein, filed 5/28/24 (dkt. no. 200).

Because there are genuine issues of material fact as to Plaintiff's direct liability false advertising claim against Saputo, the Supplier Defendants' Motion is denied as to that portion of Count I. It is not necessary for this Court to analyze whether Saputo is contributorily liable for false advertising because Plaintiff has defeated summary judgment as to its claim against Saputo for direct liability false advertising.

---

[17] Plaintiff's Exhibit 19 includes: the Declaration of Ronald C. Goodstein, Ph.D.; [dkt. no. 182-22 at PageID.2465-67;] the Goodstein Report; [id. at PageID.2468-532;] and the Goodstein Reply Report, [id. at PageID.2533-65].

### 3. <u>Contributory Liability for False Advertising</u>

In the 1/11/23 Order, this Court noted that the Ninth Circuit has not articulated a standard for contributory false advertising. 2023 WL 159907, at *6. This followed other courts within the Ninth Circuit and used the standard used in the Eleventh Circuit.

> Under the Eleventh Circuit's standard, "[f]irst, the plaintiff must show that a third party in fact directly engaged in false advertising that injured the plaintiff. Second, the plaintiff must allege that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." <u>Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.</u>, 797 F.3d 1248, 1277 (11th Cir. 2015). The second prong requires a plaintiff to "allege that the defendant actively and materially furthered the unlawful conduct — either by inducing it, causing it, or in some other way working to bring it about." <u>Id.</u> (citation omitted).

<u>Id.</u> (alteration in 1/11/23 Order) (quoting <u>Gilliam v. Galvin</u>, CIVIL NO. 19-00127 JAO-RT, 2019 WL 6718665, at *5 (D. Hawai'i Dec. 10, 2019)).

There are genuine issues of material fact as to whether MGDH directly engaged in false advertising and as to whether any false advertising injured Plaintiff. Further, viewing the record in the light most favorable to Plaintiff, there are genuine issues of material fact for trial as to the issue of whether Heritage in some way, other than inducing the use of the Relevant Text or causing it, worked to bring about

MGDH's use of the Relevant Text on the dairy products that
Heritage supplied to MGDH for sale in Hawai`i. To the extent
that the Supplier Defendants' Motion seeks summary judgment in
favor of Heritage as to Plaintiff's contributory liability false
advertising claim, the Motion is denied.

>    B.    **State Law Claims**

>         1.    **Count II - UMOC**

The evidence that raises genuine issues of material
fact as to Plaintiff's Lanham Act claims against Heritage and
Saputo based on the use of the Relevant Text also raises genuine
issues of material fact as to Plaintiff's UMOC claim against
Heritage and Saputo based on the use of the Relevant Text. See
*supra* Discussion § II.B.1 (listing the elements of a UMOC claim
under Hawai`i Revised Statutes Section 480-2). The Motion is
therefore denied as to the request for summary judgment in favor
of Heritage and Saputo as to Plaintiff's UMOC claim based on the
use of the Relevant Text on the dairy products that Heritage and
Saputo packaged and labeled for MGDH.

>         2.    **Count III – False Advertising**

The evidence that raises genuine issues of material
fact as to Plaintiff's Lanham Act claims against Heritage and
Saputo based on the use of the Relevant Text also raises genuine
issues of material fact as to Plaintiff's state law false
advertising claim against Heritage and Saputo based on the

Relevant Text. See *supra* Discussion § II.B.2 (quoting Haw. Rev. Stat. §§ 603-23.5, 708-871(1)). The Motion is therefore denied as to the request for summary judgment in favor of Heritage and Saputo as to Plaintiff's state law false advertising claim based on use of the Relevant Text on the dairy products that Heritage and Saputo packaged and labeled for MGDH.

### 3.   Count IV – Chapter 481A

The evidence that raises genuine issues of material fact as to Plaintiff's Lanham Act claims against Heritage and Saputo based on the use of the Relevant Text also raises genuine issues of material fact as to Plaintiff's Chapter 481A deceptive trade practices claim against Heritage and Saputo based on the Relevant Text. See *supra* Discussion § II.B.3 (quoting Haw. Rev. Stat. § 481A-3(a)(2)-(4)). The Motion is therefore denied as to the request for summary judgment in favor of Heritage and Saputo as to Plaintiff's Chapter 481A deceptive trade practices claim based on use of the Relevant Text on the dairy products that Heritage and Saputo packaged and labeled for MGDH.

### CONCLUSION

For the foregoing reasons, the Supplier Defendants' Amended Motion for Partial Summary Judgment, filed February 12, 2024, is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically, the Motion is GRANTED insofar as summary judgment is granted in favor of the Supplier Defendants as to all of

45

Plaintiff's claims based upon the Supplier Defendants' use of the Hawai`i-Themed Images and Phrases in connection with MGDH's products; and summary judgment is granted in favor of Hollandia as to all of Plaintiff's claims based upon Hollandia's alleged use of the Relevant Text in connection with MGDH's products. The Motion is DENIED as to Plaintiff's Lanham Act false designation of geographic origin claim against Heritage and Saputo based on direct liability; Plaintiff's Lanham Act false advertising claim against Saputo based on direct liability; Plaintiff's false advertising claim against Heritage based on contributory liability; and Plaintiff's state law claims.

There being no remaining claims against Hollandia, the Clerk's Office is DIRECTED to terminate Hollandia as a party on **June 20, 2024.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 4, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**HAWAII FOODSERVICE ALLIANCE, LLE VS. MEADOW GOLD DAIRIES HAWAII, LLC, ET AL; CV 21-00460 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART THE SUPPLIER DEFENDANTS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**