IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAII FOODSERVICE ALLIANCE, LLC, a Hawaii limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MEADOW GOLD DAIRIES HAWAII, LLC, a Hawaii limited liability company; HOLLANDIA DAIRY, INC., a California corporation; HERITAGE DISTRIBUTING COMPANY dba NINTH AVENUE FOODS, a California corporation; and SAPUTO DAIRY FOODS USA, LLC, a Delaware corporation,<br><br>Defendants. | Civil No. 21-00460 MWJS-WRP<br><br>ORDER ON PLAINTIFF'S MOTIONS IN LIMINE 1 – 4, AND DEFENDANTS' MOTIONS IN LIMINE 1 – 7 |

## **INTRODUCTION**

In this Lanham Act case, Defendant Meadow Gold Dairies Hawaii, LLC, and others are accused of having used an allegedly misleading text on the packaging of twenty Meadow Gold dairy products sold in Hawai'i. Those dairy products contain milk shipped from California. But the text, Plaintiff argues, has confused and is likely to confuse consumers into concluding that the milk comes from local cows. And, Plaintiff alleges, this confusion—and local consumers' alleged preference for local Hawai'i products—has allowed Meadow Gold to

secure a larger market share and higher prices for its products, to the detriment of Plaintiff, which is Meadow Gold's market competitor.

Trial is scheduled to begin on August 26, 2024, and the parties have filed motions *in limine* seeking pretrial rulings on certain evidentiary disputes.  Plaintiff Hawaii Foodservice Alliance, LLC, has filed four such motions, docketed at ECF Nos. 239 through 242.  Defendants have filed seven of their own, which are docketed at ECF Nos. 246 through 252.

By way of this order, the Court now rules on each of these motions.  The Court assumes the reader's familiarity with the underlying facts and background of this matter, and will refer to that background only as necessary to elucidate the issues presented in the pending motions.  Moreover, as the parties are well aware, *in limine* rulings are provisional, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000), and while the parties must comply with them so long as they are in place, the parties remain free to ask the Court to revisit them within the more particularized context of the trial itself.

## DISCUSSION

### A.  Plaintiff's Motion *In Limine* No. 1 [ECF No. 239] and Defendants' Motion *In Limine* No. 3 [ECF No. 248]

In its Second Amended Complaint, Plaintiff made broad allegations that various aspects of Defendants' product packaging and marketing behavior violated the Lanham Act and Hawai'i state law.  But in two summary judgment orders, this

2

Court substantially narrowed the issues in play.[1]  On grounds of laches, the Court ruled that Plaintiff could no longer pursue claims based on "the use of the Lani Moo mascot and the 'Hawaii's Dairy' tagline, as well as . . . other images and phrases that suggest a connection to Hawai'i without making a representation about origin, including 'MOOhalo,' 'Made with Aloha,' and notations of the historical connection with the Dairymen's Association."  *Hawaii Foodserv. All., LLC v. Meadow Gold Dairies Hawaii, LLC*, 2024 WL 363268, at *13 (D. Haw. Jan. 31, 2024) (ECF No. 176) (ruling as to Meadow Gold); *see also Hawaii Foodserv. All., LLC v. Meadow Gold Dairies Hawaii, LLC*, 2024 WL 2834159 (D. Haw. June 4, 2024) (ECF No. 209) (ruling as to other defendants).  This Court has referred to these phrases and images as the "Hawai'i-Themed Images and Phrases" as shorthand.

The only remaining claims for trial, therefore, are based on a specific phrase that appears on twenty Meadow Gold products.  That phrase allegedly makes, not an implied suggestion about the origin of Meadow Gold products, but an express one:  "Today we operate statewide and continue to manufacture fresh milk, dairy,

---

[1]     These summary judgments orders were entered by the Honorable Leslie E. Kobayashi, U.S. District Judge, before the case was reassigned to me, but the deadline for seeking reconsideration of those motions has passed, *see* District of Hawaii Local Rule 60.1, the orders are now the law of the case, and no party has asked for their reconsideration under law-of-the-case standards, *see generally EEOC v. Serrano's Mexican Rests., LLC*, 306 F. App'x 406, 407 (9th Cir. Jan. 5, 2009).

juice and nectar products in Hawai'i." *Hawaii Foodserv. All.*, 2024 WL 2834159 (ECF No. 209), at *2. For convenience, the Court has referred to this passage as the "Relevant Text." *Id.*

Plaintiff's Motion *In Limine* No. 1 and Defendants' Motion *In Limine* No. 3 arise from those summary judgment rulings. Plaintiff contends that although its claims have been narrowed, it still should be allowed to introduce a broader set of evidence about the full scope of Meadow Gold's conduct—including the Hawai'i-Themed Images and Phrases. Defendants rejoin that this evidence is irrelevant under Federal Rule of Evidence 401 in light of the narrowed claims. Defendants further contend that it would be unduly prejudicial under Federal Rule of Evidence 403 because it would amount to an end-run around the summary judgment rulings; they express the concern that admitting this evidence would effectively permit Plaintiff to invite the jury to hold Defendants liable for conduct which, under the Court's laches determinations, Plaintiff has been foreclosed from challenging.

For the following reasons, the Court grants each of these motions in part and denies them in part.

1. As an initial matter, the Court agrees with Plaintiff that for each of the twenty products on which the Relevant Text appears, the jury should also be permitted to inspect all other images and phrases that appear on those products, even if those images and phrases include matters—such as "Hawaii's Dairy,"

4

"Made with Aloha," or "MOOhalo"—for which Plaintiff may no longer seek relief.

For one thing, it is difficult to imagine how the jury could properly scrutinize the Relevant Text on these products without looking at the products as a whole; only by examining the full physical context of product packaging might a juror assess where and how, within the mix of other images and phrases, the Relevant Text takes its place. For another, if various matters were redacted on these items, it would risk juror confusion—if not outright puzzlement—and thus would not be conducive to a fair assessment of the matters in dispute.

To Defendants' credit, they see these same dynamics at play, and expressly agree that it would be appropriate to allow the jury to "see copies of containers that include 'Hawai'i-Themed Images and Phrases.'" ECF No. 265, at PageID.8003. Accordingly, and with no objection from Defendants, Plaintiff's Motion *In Limine* No. 1 is GRANTED insofar as it seeks to allow jurors to examine the full and unredacted packaging of each of the twenty Meadow Gold products on which the Relevant Text appears.

Defendants do, however, seek to exclude evidence of containers that include the Hawai'i-Themed Images and Phrases *but not* the Relevant Text. Allowing the introduction of those particular containers, Defendants say, would risk inviting the jury to find Defendants liable for conduct covered by the prior summary judgment

rulings.  The Court agrees.  Accordingly, Defendants' Motion *In Limine* No. 3 is
GRANTED to the extent that it seeks to exclude the admission of packaging of
Meadow Gold products containing the Hawaiʻi-Themed Images and Phrases and
not the Relevant Text.

2.   Plaintiff seeks more than merely to allow the jury to examine the full and
unredacted packaging of the twenty items that contain the Relevant Text.  Plaintiff
also appears to seek permission to argue to the jury that the Hawaiʻi-Themed
Images and Phrases are themselves misleading.  From that jumping-off point,
Plaintiff would argue that a consumer is more likely to view the Relevant Text as
false or misleading, given the misleading content which surrounds it.

The Court rejects this request and will not allow Plaintiff to argue that the
Hawaiʻi-Themed Images and Phrases are misleading.  Nor will the Court allow
Plaintiff to use synonyms meant to advance the same point; for example, Plaintiff
may not argue to the jury that the Hawaiʻi-Themed Images and Phrases "tricked,"
"conned," "deceived," or "confused"—to think of just some possible examples—
consumers into thinking that Meadow Gold products derive from local cows.  Even
assuming it might be minimally relevant to persuade jurors that the Hawaiʻi-
Themed Images and Phrases themselves constitute wrongdoing (which is far from
clear), there is too great a danger that if Plaintiff were to argue that the Hawaiʻi-
Themed Images and Phrases are misleading, then the jury could conclude that

6

Defendants should be liable because of those materials, even though this Court has already ruled that Plaintiff is precluded from pursuing that very result.  In other words, the risk of undue prejudice from arguments of that sort substantially outweighs, under Federal Rule of Evidence 403, any permissible significance.

To the extent Plaintiff's Motion *In Limine* No. 1 sought permission to make such arguments, it is DENIED, and to the extent Defendants' Motion *In Limine* No. 3 sought to preclude such arguments, it is GRANTED.

But while Plaintiff may not argue that the Hawaiʻi-Themed Images and Phrases themselves were deceptive, misleading, or confusing, the Court will allow Plaintiff to make the narrow factual argument that these materials—when they appear on products that also contain the Relevant Text—make it more likely that a consumer would conclude that Meadow Gold products at issue are local.  After all, jurors who review the Hawaiʻi-Themed Images and Phrases might conceivably reach that factual conclusion for themselves, and it would not be appropriate to preclude Plaintiff from pointing out that which the jury might have fairly noticed on its own from a review of labeling that every party agrees should be admitted. What is more, Defendants—though in the context of materiality—have suggested that they might make a similar factual argument themselves.  ECF No. 215, at PageID.5704 (noting that Defendants might argue, in the context of materiality, that "even if Hawaiʻi consumers believed the products came from cows in Hawaiʻi,

that misconception was likely developed due to . . . the Hawaiʻi-themed images and phrases, which MGD is permitted to use").  To put it another way, Defendants themselves have acknowledged that the Hawaiʻi-Themed Images and Phrases, though no longer relevant to establish liability in light of the laches rulings, might still be relevant as contextual evidence that might tend to persuade consumers that a milk product bearing them is locally derived.

And while that factual proposition—that the Hawaiʻi-Themed Images and Phrases tend to persuade a consumer that a product on which they appear is local— is no longer relevant standing alone (cue again the Court's prior laches rulings), it remains relevant to the extent the Hawaiʻi-Themed Images and Phrases appear on the same packaging as the Relevant Text and therefore constitute proper context for how a consumer would perceive the Relevant Text.  The Court accordingly will allow Plaintiff to argue that those images and phrases are context for assessing the Relevant Text, and that that context makes it more likely that the Relevant Text will strike a consumer in a misleading way.  If the Plaintiff carefully hews its arguments to these more limited metes, it will be capable of making the arguments it wishes to make to the jury without inviting liability on the basis of materials for which liability may no longer be sought.  The Court will carefully monitor Plaintiff's compliance with this ruling, but it is confident that Plaintiff's able counsel will abide by the ruling or seek more particularized guidance from the

Court as needed.  Moreover, although the Court agrees that there is some risk of juror confusion or prejudice from allowing arguments of even this more modest sort, those concerns can be adequately addressed through a limiting instruction. *See Anhing Corp. v. Viet Phu, Inc.*, 671 F. App'x 956, 959 (9th Cir. 2016) (affirming district court's admission of evidence of an "abandoned trademark application" in part because the district court admitted it "subject to a limiting instruction").

In this more circumscribed respect, then, Plaintiff's Motion *In Limine* No. 1 is GRANTED and Defendants' Motion *In Limine* No. 3 is DENIED.

3.   Plaintiff also seeks permission to introduce evidence of, and make arguments about, other aspects of Meadow Gold's marketing and brand development strategy.  And Plaintiff wishes to argue that Meadow Gold's more general efforts to portray itself as a local company and its products as locally derived—such as, for example, "Buy Local" displays at trade shows and radio advertisements that emphasized Meadow Gold's local connections—were themselves misleading and also make it more likely that the Relevant Text would be misleading.

As with the Hawai'i-Themed Images and Phrases, the Court will not permit Plaintiff to argue that Meadow Gold's broader advertising efforts were themselves misleading, deceitful, or any other words to that effect (except to the extent that

9

Plaintiff refers specifically to advertisements using the Relevant Text).  Whether those broader advertising efforts were misleading or constituted wrongdoing will not be at issue in this trial, and it would be unduly prejudicial, under Federal Rule of Evidence 403, to allow arguments that would create confusion on this score. But at the same time, the Court finds that it would be relevant, and not unduly prejudicial, for Plaintiff to argue that (1) Meadow Gold's advertising generally made it more likely a consumer would conclude that any particular Meadow Gold product was locally derived (which is not necessarily in and of itself misleading or wrongful, since Meadow Gold does, as it notes, distribute local products); and (2) with that context, it is more likely that a consumer would be confused by the Relevant Text on the twenty specific products at issue.

Plaintiff's Motion *In Limine* No. 1 and Defendants' Motion *In Limine* No. 3 are therefore GRANTED IN PART and DENIED IN PART along the lines spelled out above.

4.  Plaintiff separately requests permission to present evidence of the full scope and expense of Meadow Gold's advertisement efforts in order to establish materiality.  Plaintiff would argue that Meadow Gold is in the best position to assess whether such an impression would be material to the behavior of its consumers, and Meadow Gold's expenditures therefore allow the inference that it is material precisely because Meadow Gold believed it was.

The Court agrees that this usage is appropriate, so long as it is carefully and narrowly tailored. That is because, if Plaintiff is successful in proving that the Relevant Text likely caused consumers to believe that the twenty Meadow Gold products at issue here contained local milk, Plaintiff will still need to prove that consumers' behavior would have been affected by that misimpression. Plaintiff should be permitted to show that any misimpression from the Relevant Text was material precisely because, in Hawaiʻi, it is material to a consumer whether a product is local or not. And Meadow Gold's broader advertisement campaign to portray itself as a local company producing local products, Plaintiff may argue, is proof positive of that fact. That evidence is therefore highly relevant under Federal Rule of Evidence 401.

Defendants respond that their expenditures on labeling and advertising for which they face no liability is irrelevant and would mislead the jury. But Defendants do not stipulate to or concede that a Hawaiʻi consumers' impression that a product is local will make that consumer more likely to purchase the product or pay more for it. Plaintiff therefore will need to prove that fact as part of its case-in-chief. And Defendants' advertising expenditures and efforts to portray itself as a local company that distributes local products is relevant to proving that contested material fact.

That said, Defendants are once again correct that there is some risk of prejudice and juror confusion here. There is a risk that if Plaintiff introduces evidence of advertising expenditures broadly, as opposed to more specifically for the Relevant Text, then the jury could mistakenly conclude that the broad advertising campaign, rather than the Relevant Text, is what is at issue in this trial. But here again, the answer is a limiting instruction that makes clear for what limited purpose Plaintiff may use and jurors may consider advertising efforts and expenditures. Furthermore, as with the Hawai'i-Themed Images and Phrases, Plaintiff will not be permitted to argue or even suggest that Meadow Gold undertook misleading or deceitful advertisement efforts, or that liability may be based on those advertising efforts.

One final qualification is required: Plaintiff does not proffer any evidence breaking out the sums that Meadow Gold devoted, specifically, to developing or promoting the Relevant Text. Nor does Plaintiff suggest that expenditures on the Relevant Text constituted a significant or even material portion of the total expenditures on advertising generally. For these reasons, based at least on what Plaintiff has proffered to date, Plaintiff is *not* permitted to argue, based on Meadow Gold's broad advertising campaign and related expenditures, that the Relevant Text, itself, is likely to confuse a consumer into believing a product is local. To prove that more particular point, Plaintiff will need to offer evidence more

particular to the Relevant Text. The Court here permits Plaintiff to use the broad advertising campaign solely to support its more general factual contention that consumers in Hawaiʻi are more likely to purchase products (and pay a premium for products) with a local provenance.

With these understandings, the Court GRANTS Plaintiff's Motion *In Limine* No. 1 on this point, and DENIES Defendants' Motion *In Limine* No. 3 to the extent it sought to preclude Plaintiff from using advertising expenditures in this manner.

5.   Plaintiff also requests permission to use the Hawaiʻi-Themed Images and Phrases (as well as internal corporate communications about those materials) to show that Defendants acted willfully or with a malicious or improper purpose. As the preceding discussion foreshadows, the Court rejects this request under Rule 403. The prior summary judgment rulings establish that Plaintiff may not seek to impose liability against Defendants based on the Hawaiʻi-Themed Images and Phrases. Plaintiff should not be permitted to argue that any Defendant acted in bad faith by using (or discussing the use of) materials that Plaintiff may not preclude Defendants from using. Plaintiff's Motion *In Limine* No. 1 is DENIED insofar as it seeks permission to make arguments of this sort, and Defendants' Motion *In Limine* No. 3 is GRANTED to the extent it seeks to preclude such arguments.

6.   Finally, and without objection from either party, the Court agrees that the Hawaiʻi-Themed Images and Phrases may be used in the context of disgorgement

of profits, assuming there is occasion to address that issue.  Plaintiff's Motion *In Limine* No. 1 is GRANTED to this extent.  It is a separate question whether any evidence that is admissible solely for disgorgement of profits should be presented to the jury, given that there is an open question whether that aspect of relief (and perhaps others) should be bifurcated or otherwise cordoned off from the jury trial.

*     *     *

The Court has ruled that Plaintiff may use various pieces of evidence and make certain arguments, but as noted, these rulings are all subject to the giving of an adequate limiting instruction.  The Court therefore ORDERS the parties to meet and confer about a limiting instruction that would make clear to the jury for what limited purposes it may consider the Hawai'i-Themed Images and Phrases and the broader advertising efforts.  Such an instruction should make clear that a jury may not hold Defendants liable based on the Hawai'i-Themed Images and Phrases or broader advertising efforts, but that the jury may consider those materials for the limited purposes spelled out above.  The parties should provide the Court with their joint proposal—or, if no agreement can be reached, their separate proposals— no later than Tuesday, August 20, 2024.

### B.      Plaintiff's Motion *In Limine* No. 2 [ECF No. 240]

Not all of Meadow Gold's milk comes from Californian cows; some of it comes from a dairy farm on the Island of Hawai'i.  Exactly how much, however, is a live question.  In this motion *in limine*, Plaintiff claims that Defendants have refused to produce relevant evidence about the source of Meadow Gold's milk.  Most pointedly, Plaintiff alleges that in a Rule 30(b)(6) deposition, a Meadow Gold representative testified that it would be impossible to determine the percentage of milk from Hawai'i cows in Meadow Gold products.  For that reason, Plaintiff's Motion *In Limine* No. 2 seeks to bind Defendants to that position, precluding them from introducing evidence about how much, if any, Hawai'i milk is in Meadow Gold products.

Plaintiff correctly points out that a corporation is generally bound by the testimony of their Rule 30(b)(6) deponent.  ECF No. 240-1, at PageID.7258 (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)).  But that general proposition "applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict."  *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018).

No such genuine conflict exists here, as Defendants' Rule 30(b)(6) deponents did not testify that calculating the percentage of milk produced from Hawai'i cows was impossible.  It is true that Gary Sato, the former manager of

Meadow Gold's Hilo processing facility, was asked whether he lacked the information, "sitting here today," to say the percentage of Hawaiʻi milk in Meadow Gold containers, and he answered "Yes."  ECF No. 240-7, at PageID.7328 (96:5-96:11).  But he also testified that in "every production run . . . some labels get packaged with more than 50 percent of [milk from the Hawaiʻi dairy]."  *Id.* (96:17-96:19).  And Sato said that a review of the filler operator and pasteurization logs—which Defendants provided to Plaintiff—would be necessary to determine how much Hawaiʻi milk went into different products.  *See* ECF No. 266-4, at PageID.8051 (41:4-41:18); *id.* at PageID.8054-55 (94:20-95:12).  In another deposition, a different Meadow Gold employee also pointed to the production records as evidence that could answer "how much milk is being utilized in this product that was actually produced from cows in Hawaii."  ECF No. 266-3, at PageID.8041 (168:12-168:16).

In these excerpts, Defendants' deponents recognize that calculating the percentage of Hawaiʻi milk in Meadow Gold products would be possible, if perhaps arduous.  It would not be inconsistent with that testimony for Defendants to introduce evidence at trial that more than a trivial amount of Hawaiʻi cow milk went into Meadow Gold products.  Plaintiff, moreover, received the relevant production logs as part of discovery.  For those reasons, Plaintiff's Motion *In Limine* No. 2 is DENIED.

In passing, Plaintiff appears to request that Kimia Sadeghi be excluded as a witness because she was not named in Defendants' Final Pretrial Statement.  ECF No. 240-1, at PageID.7256.  The Court declines to strike her as a witness on that basis alone, as Defendants identified her in their Final Comprehensive Witness List.  ECF No. 269, at PageID.8098.

### C.      Plaintiff's Motion *In Limine* No. 3 [ECF No. 241]

Defendants plan to argue that, despite removing from many of their products the Hawai'i-Themed Images and Phrases and the Relevant Text, their sales have not fallen.  Defendants believe this evidence tends to prove that the Relevant Text was not material to consumer purchasing decisions and did not harm Plaintiff.

Plaintiff seeks to preclude any evidence or testimony related to Defendants' post-removal sales.  Plaintiff first argues that Defendants failed to produce sales evidence, and preclusion is an appropriate sanction under Rule 37(c) of the Federal Rules of Civil Procedure.  Second, Plaintiff contends that the sales data does not support Defendants' argument that the Hawai'i-related content was immaterial to consumer purchasing decisions, and its introduction at trial would therefore be misleading.

A discovery sanction would be inappropriate.  First, Defendants "have not sought to introduce" the specific sales documentation that Plaintiff now claims should have been produced; they instead plan to elicit testimony about the sales

trends.  *See* ECF No. 267, at PageID.8081.  Moreover, Plaintiff learned that

Defendants' sales were not declining by no later than February 12, 2024.  *See, e.g.*,

ECF No. 178, at PageID.1715 (Defs.' Am. Separate Concise Statement of Facts ¶¶

20, 22) (saying that, post-removal of Hawaiʻi content, demand "remained the same

or increased").  And when it learned about this assertion at the summary judgment

stage, Plaintiff conditionally requested more discovery "[i]f the Court [wa]s

inclined to consider such testimony."  ECF No. 182-2 (Decl. of LaPorte), at

PageID.1898.  While Defendants' sales-related claim arose in the context of a

summary judgment motion, Plaintiff could certainly expect that similar testimony

might later be introduced at a trial.  Yet Plaintiff elected not to move for further

discovery.  The Court will not now entertain what is, in effect, an untimely

discovery dispute.

  Additionally, the relevance of this testimony outweighs the risk of

misleading the jury.  True, the fact that post-removal sales were unchanged may

not definitively establish that the Relevant Text did not influence consumer

purchasing decisions.  But it could certainly be probative of that fact—which bears

on the materiality element of a Lanham Act false advertising claim, *see Southland

Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)—and is

therefore relevant.  Fed. R. Evid. 401.  In turn, Plaintiff may attempt to rebut that

assertion with the arguments it raises in its brief, perhaps by suggesting that COVID-19 could have distorted sales or that brand perception is sticky.

Of course, all testimony proffered by Defendants will be subject to the rules of evidence, and Plaintiff remains free to raise objections at trial.  The rule against hearsay, for example, might conceivably prevent witnesses from testifying about specific sales numbers in particular reports.  But the Court will not preclude Defendants from offering general testimony about their sales after they removed the Hawaiʻi content, and Plaintiff's Motion *In Limine* No. 3 is therefore DENIED.

### D.     Plaintiff's Motion *In Limine* No. 4 [ECF No. 242]

In 2020, Plaintiff's CEO, Chad Buck, discussed purchasing Meadow Gold assets with Meadow Gold's owner, Bahman Sadeghi.  Those discussions ultimately fell through.  Plaintiff now moves to preclude Defendants from eliciting any testimony or introducing evidence about those discussions, arguing that they are irrelevant to the case's claims.  And Plaintiff further argues that, to the extent the discussions are marginally relevant, such relevance is outweighed by the risk of wasting time and confusing the jury.

As Defendants point out, however, testimony about the unsuccessful discussions is admissible as evidence of Buck's bias.  *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his

testimony.'" (quoting 3A J. Wigmore, *Evidence* § 940 (Chadbourn rev. 1970))).

Moreover, the probative value of this testimony to show bias is not "substantially

outweighed by a danger" of wasting time or misleading the jury, Fed. R. Evid. 403,

as it is possible to challenge a witness's credibility without making arguments

about the merits of a claim.  The Court therefore DENIES Plaintiff's Motion *In

Limine* No. 4.

### E.   Defendants' Motion *In Limine* No. 1 [ECF No. 246]

After the filing of this suit, Defendants removed the Hawaiʻi-Themed

Images and Phrases and the Relevant Text from some of Meadow Gold's labels.

In the first of their motions *in limine*, Defendants seek to exclude "any oral or

documentary evidence of Defendants' subsequent remedial measures in order to

prove culpable conduct."  ECF No. 246, at PageID.7482.

While evidence of subsequent remedial measures can be introduced for

some purposes—like impeachment, control, or the feasibility of precautionary

measures—it cannot be introduced to prove culpable conduct.  Fed. R. Evid. 407.

Plaintiff implicitly admits as much.  Indeed, Plaintiff explains the *other* purposes

for which it plans to introduce evidence of the labelling changes and related

discussions, such as to show that Defendants willfully sold products with the

Relevant Text to Hawaiʻi consumers after the lawsuit was filed.  Plaintiff appears

especially interested in introducing an email in which Saputo identifies the

Relevant Text as potentially misleading. *See* ECF No. 258, at PageID.7559. And Plaintiff would introduce that email "not as evidence that Defendants removed misleading advertising *because* they were culpable, but as evidence that Defendants *continued to use* misleading advertising after the lawsuit was filed." *Id.* at PageID.7560 (first emphasis added).

For that reason, Plaintiff's proposed uses of this evidence do not appear to be covered by Defendants' motion, which seeks to preclude evidence of remedial measures "to prove culpable conduct." ECF No. 246, at PageID.7482.[2] Because such a purpose is squarely prohibited by Rule 407, the Court GRANTS Defendants' Motion *In Limine* No. 1, insofar as it precludes the admission of remedial efforts to prove culpable conduct.

### F.    Defendants' Motion *In Limine* No. 2 [ECF No. 247]

One of Plaintiff's contentions is that Hawaiʻi consumers paid more for Meadow Gold milk products because they believed these products contained local milk. To establish that assertion, Plaintiff intends to introduce the lay witness testimony of its CEO, Chad Buck, as well as its Director of Brand Management and Strategic Marketing, Joni Marcello, to testify about a price premium they

---

[2]    To the extent Defendants have concerns about the risk of prejudice even from the more limited purposes for which Plaintiff wishes to use this evidence, the Court would grant an appropriate limiting instruction. If Defendants want that limiting instruction, they should meet and confer with Plaintiffs and then provide a joint proposal (or, separate proposals if agreement cannot be reached).

observed for Meadow Gold's products.  Defendants now seek to preclude that

testimony, arguing that Buck and Marcello participate in the wholesale market and

therefore are not competent to testify about the pricing practices of retailers.

Defendants further argue that it would be inadmissible hearsay for Buck or

Marcello to testify about retail prices they observed but did not themselves set.

It is certainly true, as Defendants contend, that Plaintiff may not merely

"cherry-pick individual instances in which they claim Meadow Gold milk appeared

to have a higher retail price than one of the products Plaintiff distributes, where

there is no showing by Plaintiff's experts that they undertook a retail survey or

study demonstrating a price 'premium' for Meadow Gold products."  ECF No.

247, at PageID.7487.  But Plaintiff persuasively responds that it does not intend to

offer cherry-picked prices.  Instead, Plaintiff explains that Buck and Marcello have

extensive personal knowledge about retail prices and industry practice.  That is in

part because, Plaintiff says, both are deeply familiar with the setting of wholesale

prices, and both know from personal experience that wholesale and retail prices in

the milk product industry are intertwined.  ECF No. 259, at PageID.7596 (quoting

Buck as having testified in his deposition that the "lower [HFA] charge[s], the

lower the retail price typically" (alterations in original)).  It is also in part because

Buck and Marcello have "specifically tracked" Meadow Gold's "retail prices on

milk products" due to Plaintiff's concerns about Meadow Gold's allegedly

"deceptive labelling." *Id.* Defendants of course remain free to challenge the probative value of Buck and Marcello's expected testimony, as well as the sufficiency of the basis for their conclusions. But Plaintiff has proffered a sufficient basis for their witnesses to testify on the price-related matters at issue. *See Lightning Tube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (observing that "the modern trend favors the admission of lay opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination" (cleaned up)).

At the same time, Buck and Marcello's testimony must be carefully and narrowly tailored to opinions that are "rationally based" on their "perception." Fed. R. Evid. 701. That is, Buck and Marcello must only testify about matters that stem from their own experiences working in the industry, *see Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CIV 08-1101, 2009 WL 3672495, at *14 (D.N.M. Sept. 29, 2009), and they must not offer any opinions based on matters they merely heard or learned from others, which would be hearsay.

Picking up on this point, Defendants argue that if Buck or Marcello observed prices that other retailers set, that would be inadmissible hearsay rather than matters within the witnesses' own experience. In support of this argument, Defendants cite *United States v. Johnson*, 79 F.4th 684, 700 (6th Cir. 2023), for the proposition that "photos showing price of car were inadmissible hearsay to show

the car was worth the prices shown."  ECF No. 247, at PageID.7487.  The Court

agrees that a photograph of a price is, essentially, an out-of-court assertion of what

price the seller would accept for the item in question.  Standing alone, such a

photograph would be hearsay if offered for the truth of the asserted price depicted.

As the Sixth Circuit explained in *Johnson*, if photos here were offered to establish

the truth of milk prices, "those pieces of evidence would be hearsay."  79 F.4th at

700.[3]

Plaintiff assures the Court that it will not, however, "proffer witnesses to

testify about or introduce other evidence of retail prices to establish the value of

any milk product."  ECF No. 259, at PageID.7599 (emphasis omitted).  Instead,

Plaintiff proposes to "offer direct testimony from witnesses with personal

knowledge about retail prices and practices and documents that satisfy the business

records or residual exceptions to the hearsay rule demonstrating the actual prices

---

[3]      Plaintiff counters that the "fundamental" problem in *Johnson* was not that
photographs of prices were hearsay, but that the defendant in that case had failed
adequately to authenticate the photographs.  ECF No. 259, at PageID.7598
(quoting *Johnson*, 79 F.4th at 700).  Nonetheless, *Johnson* supports Defendants'
position here.  After explaining that a photograph of a price, offered for the price,
would be hearsay, the Court then explained that the defendant "argues that he
offered the evidence to prove his state of mind regarding the cars' value, not their
true value."  *Johnson*, 79 F.4th at 700.  In other words, the defendant did not
dispute that photographs of a price would be hearsay if offered for the truth; he
contended that he sought to offer the photographs for reasons other than their truth.
And the Court found even those non-truth reasons to be "unavailing" because the
defendant had failed to establish the reliability of the exhibits.  *Id.*

displayed on milk products offered for sale." *Id.*  It remains to be seen whether Plaintiff will succeed in offering such evidence, and Defendants remain free to object at trial that Plaintiff's proffered evidence does not clear the bar that Plaintiff itself recognizes it faces.  But because, at this stage, it would not be appropriate to preclude Plaintiff from attempting to clear that bar, Defendants' Motion *In Limine* No. 2 is DENIED.

### G.    Defendants' Motion *In Limine* No. 4 [ECF No. 249]

Plaintiff believes it is relevant to willfulness that Heritage Distribution Company—a California-based company that produces, packages, and labels Meadow Gold products—decided to continue printing labels with the Relevant Text.  To that end, Plaintiff intends to introduce testimony from Steven Goldenstein, Jr., a representative of Heritage, regarding the content and review process for Heritage's labels.

Defendants move to exclude such testimony, contending that such testimony should be barred in light of an earlier summary judgment order.  In that order, the Court granted summary judgment in favor of Heritage for the direct liability false advertising claim asserted against it.  *Hawaii Foodserv. All.*, 2024 WL 2834159 (ECF No. 209), at *12.  The Court found that "Plaintiff ha[d] not identified any evidence that raises a genuine issue of fact a[s] to whether Heritage had control over the use of the Relevant Text."  *Id.*  Defendants additionally argue that

25

testimony from Goldenstein about other portions of the Meadow Gold label and about labels on other Heritage products is irrelevant.

The Court disagrees.  The earlier summary judgment order decided a narrow, discrete issue:  whether Heritage had control over the Relevant Text for purposes of direct liability on the false advertising claim.  That ruling does not mean that any testimony about Heritage's labelling lacks all relevance to Plaintiff's other claims.  For example, Plaintiff might argue that Heritage's continued labelling of products with the Relevant Text is evidence of willfulness, ECF No. 261, at PageID.7829-31, and that argument is not foreclosed by the prior summary judgment order.  Evidence about other aspects of Heritage's labelling practices could also be relevant; Plaintiff suggests it might be necessary for impeachment purposes.  *Id.* at PageID.7832.

Of course, Plaintiff must remain mindful of the laches ruling, and it cannot introduce evidence of the Hawaiʻi-Themed Images and Phrases to itself be the foundation for a finding of liability.  But the Court will not bar all testimony about all aspects of Heritage's labeling because of the prior summary judgment ruling.  Defendants' Motion *in Limine* No. 4 is DENIED.

### H.     Defendants' Motion *In Limine* No. 5 [ECF No. 250]

Defendants seek to preclude Chad Buck from testifying that he "witnessed retail consumers selecting Meadow Gold because they thought that the milk was

locally-sourced, and that he spoke to 'many people,' whom he did not identify, that said they believed Meadow Gold milk is local." ECF No. 250, at PageID.7513. Defendants contend that it would be improper for Buck to testify about out-of-court declarants' "purported beliefs about the origin of Meadow Gold milk" or such declarants' "selection of Meadow Gold milk based on those purported beliefs." *Id.*

The Court agrees. Indeed, Plaintiff does not meaningfully dispute Defendants' arguments. In its opposition to Defendants' motion, Plaintiff disclaims any intention to call Buck for the challenged purposes. Instead, Plaintiff explains that it intends to call Buck to "testify based upon personal knowledge regarding consumer demand and consumer preference in Hawai'i for locally sourced products." ECF No. 262, at PageID.7842. The Court's ruling on Defendants' motion does not preclude Plaintiff from offering testimony based on Buck's own personal knowledge and experience. With these qualifications, Defendants' Motion *In Limine* No. 5 is GRANTED.

## I.    Defendants' Motion *In Limine* No. 6 [ECF No. 251]

In a Rule 30(b)(6) deposition, a representative of Saputo, Monica Ciaramitaro, was asked for her "understanding of what truth in advertising means with respect to the labeling of products." ECF No. 251-2, at PageID.7534 (50:17-50:19). Defendants now seek to exclude any testimony about their representatives'

understanding of "truth in advertising," as they contend that it calls for an impermissible legal conclusion and is not relevant.

It is of course correct that a lay witness may not testify to a legal conclusion. *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001).  But viewed in context, the deposition testimony did not call for legal conclusions.  Counsel for Plaintiff instead asked Ciaramitaro a series of questions about her understanding of Saputo's ethical commitments, including its commitment to honesty.  *See* ECF No. 263-3, at PageID.7932-34 (49:13-51:24).  Within that context, counsel inquired about Ciaramitaro's understanding of truthful advertising.  *Id.* at PageID.7933 (50:1-50:2, 50:15-50:19).  And Ciaramitaro's answer described Saputo's "ethical responsibility to make sure the label states the product that's in it."  *Id.* at PageID.7933-34 (50:24-51:1).

Plaintiff does not intend to elicit this testimony at trial to bolster a legal conclusion.  Instead, this testimony would be relevant, Plaintiff explains, as it tends to prove "Saputo's control and intent in labeling its products and continuing to produce and sell them."  ECF No. 263, at PageID.7900.  When introduced for those purposes, this testimony is permissible, and Defendants' Motion *In Limine* No. 6 is DENIED.

28

### J.      Defendants' Motion *In Limine* No. 7 [ECF No. 252]

Plaintiff contends that the Relevant Text has caused Plaintiff to lose market share or fail to gain additional customers.  One of the ways in which Plaintiff will seek to prove this assertion is through the expert testimony of Dwight Duncan, which this Court previously ruled was admissible in part.  *See* ECF No. 253. Another way is through the testimony of CEO Chad Buck.

In the last of their motions *in limine*, Defendants seek to preclude Buck from providing lay testimony about this alleged competitive harm.  According to Defendants, Buck's testimony on this topic would be speculative (because there is no evidence that any profits or market share were lost because of the Relevant Text) and inadmissible hearsay (because Buck has no personal knowledge of any loss of profits or market share owing specifically to the Relevant Text).

 These arguments, at least at this stage, are not persuasive.  As Plaintiff points out, Buck has extensive knowledge operating his company and within the broader industry.  It is appropriate for an individual with this degree of personal experience to testify about a company's lost profits.  *See* ECF No. 264, at PageID.7961-62 (citing authorities supporting the conclusion that a CEO or other similarly high-ranked corporate officer may testify as a lay witness about a company's lost profits).  Indeed, "[t]here is an abundance of case law where corporate employees are permitted to testify about damages or company valuation

without qualifying as an expert." *Erhart v. Bofl Holding, Inc.*, 445 F. Supp. 3d 831, 842 (S.D. Cal. 2020) (quoting *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1105 (D. Ariz. 2019)).  The basic idea underlying these cases is that the lay opinion testimony is "admitted 'because of the particularized knowledge that the witness has by virtue of his or her position in the business.'" *Id.* (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

These principles support the admission of Buck's proposed testimony on lost profits here.  Although it is unquestionably a nuanced and different task to assess what if any lost profits stem specifically from the Relevant Text, Buck's personal experiences are a sufficient basis for him to offer his opinions on that issue.  Perhaps those opinions will be vulnerable, and Defendants will have a full opportunity to cross-examine that testimony and to offer evidence and arguments of their own.  Defendants' Motion *In Limine* No. 7 is DENIED.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motions *in limine* are decided as follows:

- Plaintiff's Motion *In Limine* No. 1, ECF No. 239, is GRANTED IN PART and DENIED IN PART;
- Plaintiff's Motion *In Limine* No. 2, ECF No. 240, is DENIED;
- Plaintiff's Motion *In Limine* No. 3, ECF No. 241, is DENIED; and
- Plaintiff's Motion *In Limine* No. 4, ECF No. 242, is DENIED.

Defendants' motions *in limine* are decided as follows:

- Defendants' Motion *In Limine* No. 1, ECF No. 246, is GRANTED;

- Defendants' Motion *In Limine* No. 2, ECF No. 247, is DENIED;
- Defendants' Motion *In Limine* No. 3, ECF No. 248, is GRANTED IN PART and DENIED IN PART;
- Defendants' Motion *In Limine* No. 4, ECF No. 249, is DENIED;
- Defendants' Motion *In Limine* No. 5, ECF No. 250, is GRANTED;
- Defendants' Motion *In Limine* No. 6, ECF No. 251, is DENIED; and
- Defendants' Motion *In Limine* No. 7, ECF No. 252, is DENIED.

The Court also ORDERS the parties to meet and confer about a limiting instruction that would make clear to the jury for what limited purposes it may consider the Hawaiʻi-Themed Images and Phrases and broader advertising efforts. The parties' proposals are due by Tuesday, August 20, 2024.

IT IS SO ORDERED.

DATED:  August 12, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 21-cv-00460 MWJS-WRP, *Hawaii Foodservice Alliance, LLC v. Meadow Gold Dairies Hawaii, LLC*, et al.; ORDER ON PLAINTIFF'S MOTIONS IN LIMINE 1 – 4 and DEFENDANTS' MOTIONS IN LIMINE 1 – 7

31